UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>TOBY MACFARLANE,  )<br>  )<br>Defendant.  )  | Case No. 1:19-cr-10131 NMG |

**REDACTED EXHIBITS TO DEFENDANT TOBY MACFARLANE'S**

**SENTENCING MEMORANDUM**

**(Leave of Court granted to sealed version on November 5, 2019)**

# EXHIBIT A

## Macfarlane Personal Statement

I was born on January 29th, 1963 to ███████ Macfarlane III and ███████ Macfarlane in Salt Lake City, Utah. My brother ███████ Macfarlane was 3 ½ years younger than me. My mom, ███ always used to describe me as a "very energetic" little guy, not in a hyperactive way, but always on the move. My earliest memories of my childhood were not happy ones. My parents' relationship deteriorated when I was still quite young. They eventually got divorced, when I was seven and my whole world felt like it had been torn apart. I remember crying myself to sleep on many occasions. When I was older, I promised myself that I was going to have a family someday and that I would never let it be split apart. I wasn't going to let that happen to my children.

When I was nine, I moved to San Ramon, California (the Bay Area) with my mom, brother and our dog. It was very difficult for me knowing that I would only see my dad a couple times a year. I missed him terribly. For a time, my mom did not have a job so we were forced to share a small apartment with another single mom. Eventually, my mom got a job as a secretary and she moved us into our own small apartment. Money was really scarce for our family. From a very young age, I believed that I was the man of the house and shouldered a lot of responsibility. When I was twelve, I got a paper route. I was up every morning, folding newspapers and delivering them on my bike before the sun rose.

My mom did an amazing job raising us. She instilled in us the values of honesty and hard work and the confidence that we could do anything we set our mind to. Upon entering High School, my mom convinced me to run for Freshmen Class President even though I was extremely shy and resisted. With her tutoring, I won the election. This was a turning point for me.

In my Senior Year, I was elected Student Body President. In addition, I was a varsity athlete in four sports, worked 20 hours per week, and got pretty good grades. When I saw the campus of USC, I immediately knew that it was the place for me. But I had no way to pay my tuition to this expensive private school, and my parents couldn't help. Fortunately, I was accepted to USC and was able to pay for school with a combination of state and federal grants, a scholarship from my high school, a scholarship from the local Rotary Club, University assistance, student loans, and Pell grants. I also had various jobs the entire four years.

After graduating from college I had trouble finding a job but I finally landed a sales position with National Cash Register in the Las Vegas territory selling computers to hotels. I moved to Las Vegas and worked there for two unspectacular years. I yearned for more. I found my way to a family friend in San Diego who gave me an opportunity to work for his Title Company. This was another turning point. I loved the job and did well. Eventually, I became a licensed title insurance agent.

Shortly after I arrived in San Diego, I received the news that my twelve year old half-sister, ███████ had been diagnosed with a rare adult form of leukemia. (My Dad had remarried.) ███████ and I had become extremely close. I spent my weekends visiting ███ in the Children's Hospital in Los Angeles. We lost ███ after less than a year of battling this horrible disease. The Make a Wish foundation granted ███ her wish to go to Hawaii to swim with the dolphins. She passed away during the trip. I was right by her side until the end. I was devastated.

1

After ███ died, I got involved with the Make a Wish foundation and the Leukemia Society back in San Diego. I longed to do more and make a bigger impact so I joined the Big Brothers and had a little brother that I spent time with and mentored. I also joined the board of the San Diego Tennis patrons who provided after school tennis programs to kids in poor neighborhoods. During my time on the board we raised $4,000,000 to build the Barnes Tennis Center a facility with 21 courts complete with transportation for under-privileged kids to take part in a multi-faceted after school program.

Meanwhile, my career in Title Insurance flourished. In 1990, I founded Southland Title of San Diego and served on the board of the parent company. I also served on the board and loan committee of a startup Sunrise Bank of San Diego in 2001. Bank boards are highly regulated by the FDIC and my background and integrity played a large role for me to get this position.

In 1989, I met ████████████. We started dating shortly thereafter and were married in October 1990. In 1996 our daughter ██ was born. ██ was everything to me and it was so rewarding to become a father and start a family. ████ worked until the day ██ was born and then opted to be a stay at home mom. This put lots of financial pressure on me, but I agreed with her decision.

In 1998, our son ██ was born. I loved every aspect of being a father. I coached four seasons of soccer for ██'s teams. It was a tremendous experience working with the kids. I went on to coach three seasons of basketball and one season of soccer for ██'s teams as well.

In retrospect, I think I was probably a little frenetic about the kids' sports and activities. And I was also in denial about my marriage. As the kids went through school, cracks were developing in my relationship with ████. I didn't see them or perhaps, wouldn't let myself see them. I know now that ████ was becoming more and more unhappy. ████████████████████████ But she was still the love of my life and I was determined to make the marriage work. I believed that I could will my way to a successful marriage. We saw a counselor together, but ████ didn't put much energy into it.

It all started to fall apart in 2012 and 2013, during ██'s senior year of high school. ████████████████████████████████████ I was scared to death. Scared of losing ████, for sure, but even more that I was going to let my kids down the way my dad let me down. I was desperate to keep them from suffering the way I had. During these years, I experienced the beginning of my most serious personal crisis. It also happens to be when Rick Singer came into our lives. Looking back on it now, I realize that I made a series of very bad decisions during that time and over the next few years, until I finally accepted the reality that my marriage was over. Chief among those bad decisions was agreeing to Singer's scheme to get my kids into USC. I knew it was wrong, but at the time I was feeling completely overwrought and all I could think of was not having to worry about my kids getting into college. Foolishly and selfishly, I took what seemed like an easy way out.

Early in 2014, ████ informed me that she wanted a divorce. I was crushed by the news and despite everything that had happened, I was completely caught off guard. My world went into an even deeper tailspin as ████ moved out of the house. I was in therapy and taking prescribed medication for anxiety, depression and insomnia. It was now just me and the kids living in our family home. Neither of the kids went to live with ████. After a few months, ████ changed her mind

about the divorce and decided to move back into the house. I felt like a ping pong ball but still clung to the hope that we could work things out.

After ▮ left for USC, ▮ would leave ▮ and I for weeks at a time traveling on random trips. We were left to fend for ourselves. Sadly, ▮ was experiencing his own emotional issues. ▮▮ It was scary. In my own head I thought that all that mattered was to hold things together for him and to keep him from suffering pain or disappointment. In the meantime, ▮ was a senior in high school and it was his time to choose a college. We considered many schools, but his interest kept reverting back to USC. I was not convinced that USC was right for ▮, as he suffered from ▮▮▮ and I thought it might be easier for him if he attended a school closer to home. But ▮ was set on USC, probably in part because his sister was there and in part because it was my alma mater and ▮ knew how much I loved the school. So I wanted to do everything in my power to make sure that ▮ was not disappointed.

In early 2017 ▮ again filed for divorce. I still tried to be a rock for my kids during these tough times. But inside, I was emotionally drained. ▮ ▮ ▮
▮▮▮ I had never seen him so ▮▮▮ I think that's when I hit bottom. ▮ never made it to USC in the fall of 2017 and he received a medical deferral. The following semester, after much therapy, ▮ attended USC but had a major anxiety attack right before finals and never returned. Since then, my primary focus has been to help ▮ get better, which includes ▮▮▮ ▮▮▮ It has been a struggle, and at times ▮ has become angry at me and even shut me out. In April, ▮▮▮ ▮▮▮ Currently, he is living part-time between his mother's house and my house. He seems to be doing okay. As a father, the knowledge that the bad decisions I made and legal problems that resulted may have exacerbated my son's emotional problems is a very hard pill to swallow.

After my divorce was finally completed in 2018, I began to put my life back together. Fortunately, I met a wonderful lady, ▮▮, who has brought love and new found perspective into my life. We share the same values of family (▮ has a 19 year old son ▮) and hard work (▮a has her own book keeping company). My title insurance career had suffered during the previous four years and I began to put it all back together. It was very rewarding to realize that I was still a valued member of my Title Company and that my 32 years of experience and a record of trust by most of the top real estate professionals and business leaders in San Diego meant something. I believe that my colleagues and partners saw my integrity as the cornerstone of my business and know that my reputation was impeccable.

My arrest completely shattered my professional life. The California Department of Insurance suspended and then revoked my license and my employer had no choice but to comply with the order and terminate my employment. My reputation is destroyed. My other primary source of income, real estate investments, was also derailed when my primary bank withdrew the line of credit that I rely on to run my investments. In addition, another bank is threatening to call loans on two of my core properties. To prevent a personal financial crisis, I am in the process of selling some properties at a substantial discount.

I know that it was wrong to get my kids admitted to USC as recruited athletes

when they were not. I know that I alone am to blame for the bad decisions I made and for their consequences. For me, the most difficult thing to accept is the fact that I set such a bad example for my kids. I want to apologize first and foremost to them, but also to USC, to other people's families who were applying to USC, to the prosecutor, the Court and everyone else who has been hurt by my actions.

Professionally and financially, I am paying dearly for my mistakes. But I am determined to bounce back from these blows. Incredibly, I have been fortunate to receive tremendous support from my family, colleagues and friends. The brightest spots are my children and ████. They are all standing by my side. Despite my mistakes, they have faith in me and seem confident I will find my stride again and will re-earn their trust and respect. I will do everything in my power to make them right.

July 19, 2019

Toby Macfarlane

# EXHIBIT B

# JOAN FRIEDSON, M.D.

Diplomate of the American Board of
Psychiatry and Neurology
6121 La Jolla Mesa Drive
La Jolla, CA 92037
(858)  551-8171

July 21, 2019

Honorable Nathaniel M. Gorton
United States District Court, Dist. Mass.
1 Courthouse Way, Courtroom No. 4
Boston, Massachusetts  02210

Dear Judge Gorton:

I am a psychiatrist licensed to practice in the state of California.  For almost 30 years, I have
maintained a clinical practice specializing in the treatment of anxiety, depression and other affective
disorders.  Toby Macfarlane has been my client intermittently over the last 20 years, with more
frequent visits during times of greater adversity and ego distress.  During the more serious episodes,
Toby has suffered from both depression and anxiety, for which on occasion I have prescribed
medication.  As a result of my treatment of Toby, I believe that I have a professional longitudinal
perspective concerning his character.  At Toby's request and with his permission, I write to offer
some observations to the Court concerning his character generally and, more specifically, concerning
his psychological state during those most stressful years when his marriage faltered and ultimately
failed—2013 to 2017—and Toby made the self-destructive decisions that resulted in his legal
problems.

Without a doubt, the defining trauma in Toby's life was his parents' divorce.  Only seven years old
at the time, Toby adored his father and felt very close to him.  Yet, one day without warning Toby's
father left his mother for another woman and abandoned Toby and his younger brother.  That
devastating experience helped to shape Toby's world view and moral core.  But rather than become
a distrustful, angry and walled-off person, as many people might, Toby's reaction was the opposite:
He became extremely responsible, reliable and loyal, actively chose honesty and candor over deceit,
and pursued fairness and stability over entitlement and self-dealing.  These are the sinews which
anchor the structure of who Toby is.

As a young person, Toby promised himself that he would one day establish his own family and that,
unlike his own father, he would be a loving and reliable husband and would always be there for his
children.  When marriage and fatherhood arrived, Toby threw himself whole-heartedly into both
roles.  Despite a demanding and successful career, he coached ▮▮▮'s and ▮▮▮'s sports teams,
regularly attended school functions, and continued to romance ▮▮▮.  When issues arose with the
kids or with ▮▮▮, Toby often sought my counseling and advice and, characteristically, upon
deciding a course of action would execute it.  He saw his primary role as that of a provider/protector

1

of his family, and he acted unwaveringly to ensure the safety and happiness of his children, beginning with a commitment to maintaining a stable and intact family. Because of the central role played by divorce in Toby's own psyche, he willingly endured great personal sacrifice and self-deprivation—and, as we can now see, engaged in self-destructive conduct—in his efforts to help his own children avoid that same pain.

████, Toby's eldest child, was a high-achiever and excellent student. As ██'s senior year of high school approached, her college prospects were excellent. Unfortunately, by that time Toby's relationship with ████ was deteriorating. ████████████████████████████



Toby, of course, was aware of ██████'s unhappiness and distance. But there was also a powerful sense of denial. Divorce simply was not an option for Toby, and he remained as determined as ever to ensure that his marriage succeeded. He continued to put aside his personal disappointments and frustrations in the hope that he could save his marriage and, more importantly, that he could save his children from the trauma and pain that had defined his childhood. It required a herculean effort combined with a capacity for personal deprivation. Toby believed that he was setting aside his own needs in the service of his family. But, of course, the effort took its toll and ultimately failed. In early 2014, ████ moved out and announced that she wanted a divorce. ████ stayed with Toby and Toby believed that his worst nightmare was coming to pass: His children were facing parental abandonment just as he had. By February 2014, Toby was in a full blown anxious depression characterized by significant insomnia, obsessive thoughts about his wife, anergia and anhedonia. I prescribed ████ to treat his anxiety, ████ for the depression and ████ for the insomnia.

Toby continued to do everything he could to maintain stability for ████████. He was determined that they should experience as little anxiety or pain as possible. He saw himself as the only constant in their lives. After a few months, ████ decided to move back in, and she dropped the request for a divorce. But it was only temporary, and ████ never really recommitted to the marriage. ██ ████████ By the summer of 2014, ██ was leaving for college so Toby and ████ were often alone. Unlike ██████████████████████ ████████████ was a constant concern for Toby. At some level, Toby blamed himself and his failing marriage for ██'s condition. Toby tried to ensure that ██ participated in sports, worked with tutors and did his school work. Toby attended ██'s basketball games and other school events. Throughout ██'s high school years, and indeed to this day, ██ was and is a constant worry for Toby.

In early 2017, ████ again moved out and filed for divorce. For a time, Toby still struggled to accept the inevitable. He continued to see the end of his marriage as a personal failure and as a betrayal of his children. Although ████ was accepted to U.S.C. that spring, he remained a continuous concern. In August, ██████████████████████████████ ████████████████, and though he attempted to attend the school that spring, he again succumbed to anxiety, dropped his classes and returned home. I understand that ██████████████ ████████████

It is my opinion that for much of the period 2013 through 2017, Toby suffered subsyndromal phases of depression and anxiety. These episodes were evidently acute reactions to the emotional stress

Toby endured during the deterioration and eventual termination of his marriage, and Toby's condition was severe enough on occasion throughout this period to require treatment with medication. It is well documented that such depression and anxiety impact the brain's executive functioning and can be associated with impaired judgment and poor insight. It is no surprise to me that Toby's uncharacteristic misconduct occured during this time.

Toby has spoken to me at length concerning the improper decisions he made regarding the scheme to get his children into U.S.C. He understands the gravity of his misconduct and is sincerely remorseful for it. He also understands that through a twisted sense of loyalty to his children, he brought shame not only upon himself but also upon his family and especially upon his children – whom he so desperately wished to protect. In my opinion, Toby is not a risk to re-offend.

Thank you for the opportunity to share these insights. Please contact me if I may be of further assistance.

Very truly yours,

Joan Friedson, M.D.

3

# EXHIBIT C

To: The Honorable Nathaniel M. Gorton
c/o Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkeley, California 94710

From: Jules Arthur

███████████

Dear Judge Gorton:

My name is Jules Arthur and I have been friends with Toby MacFarlane for over 20 years. We met through business which ultimately evolved into us becoming family friends. I recently became aware that Toby has pleaded guilty to the college admissions scheme.

I first met Toby when he ran a Title Company, which we utilized as part of our real estate brokerage business. He was known for his integrity and his professionalism in dealing with complex title issues. In all of our business dealings he was honest and reliable. I understand that as a result of the charges his Title Insurance license has been suspended preventing him from conducting his daily business.

Toby has a big heart and is one of my most loyal and consistent friends. He sticks with his friends through the ups and downs of life. He really cares about others and is one of the best listeners. He shows genuine interest in people's situations and has a terrific ability to empathize with them.

In recent years he has become friends with my 80-year old mother from England. Whenever she comes to visit, he always makes time to take her out to lunch and have a heart to heart. She has had a difficult life and he offers her a willing ear and moral support. She recently had a surgery and Toby took the time to correspond with her regularly through the recuperation period to her great delight.

Toby is a kind and generous person both with his time and resources. He has offered support to my son who is a struggling musician regularly making the effort to go and see his shows often travelling long distances. I raise money for several local charities by hosting various events and Toby is always a willing participant.

I would like to ask that you please consider Toby's history as an upstanding member of society, who makes positive contributions to his community and who has a substantial network of people who rely on him including his extended family and employees.

Toby is obviously shaken by recent events and has repeatedly expressed his remorse and contrition for his actions in numerous conversations I have had with him. He has fully taken responsibility for what he has done.

I greatly appreciate your time in reviewing this letter of support and giving it consideration.

Yours sincerely,

Jules Arthur

I

Ann Block

June 8, 2019

To the Honorable Nathaniel M. Gorton
C/O Arguedas, Cassman & Headley, LLP
803 Hearst Ave
Berkeley, CA 94710

Dear Judge Gorton:

My name is Ann Block and I have known Toby Macfarlane since 1998 and his children since their birth. We met when I began a career as a commercial real estate broker with Marcus & Millichap, and continued throughout my work in brokerage and then commercial lending with Chase bank for an additional 20 years. Toby has pled guilty to the college admissions case, and so I am writing this letter of support.

Toby was the most influential person for me at the start. I was 39 with a background in sales but not real estate when I began in a firm of 100 brokers, of which only 4 were women. In a field where women were not welcomed, Toby taught me how to go above and beyond for my clients in escrow and exchanges, about title issues, and on several occasions how to recognize and respond to brokers who were not living up to their fiduciary responsibility. He did this as a kindness, not knowing me previously or knowing if I would succeed. As my reputation grew, he welcomed me a annually to meet with a group of real estate influencers he brought together for discussion on how to improve business practices across our entire field.

As a past president of 2 nonprofit organizations, The SAN Diego County Apartment Association and the San Diego chapter of CCIM ( Certified Commercial Investment Member ), in calling on Toby he unfailingly supported our annual charity drives with sponsorship and attendance. He gave of his personal time, commitment and money.

When recessions struck and during the bank breakdown of 2008, I witnessed Toby spending hours on the phone and in meetings to help place suddenly unemployed secretaries, processors and receptionists. A call from Toby means powerful credibility in our field and he was able to rescue many families in hard times by helping place both coworkers and staff of industry partners. I never saw anyone else do this.

For close to 3 decades, Toby and I meet annually to openly share our goals with each other, and cheer each other on. We talk about career and family commitments honestly and receive both support and accountability from each other. As a result, I know firsthand Toby's tremendous work ethic that built his business, and now his sorrow and suffering over this case. His son lives with Toby full time and relies on Toby for day to day support. Toby has indeed learned a powerful lesson. In passing sentence, I hope you can consider his current remorse and lifetime of good works as you impose the sentence.

Thank you for your time in reading this and consideration of Toby's future,

Yours truly,

Ann Block

To the Honorable Nathaniel M. Gorton
c/o Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkley, California 94710

Dear Judge Gorton:

My name is Jim Crestani.  I have personally known Toby Macfarlane for over 45 years. I am
confident that no one (albeit his mother), knows him, as well as I do.
We worked together in the Title Insurance Industry for over 28 years.
I am also aware that Toby has pleaded guilty in the college admissions scheme.

I am extremely hopeful that my letter will give you some insight as to Toby's character, not only
as a man, but as someone who is held in high esteem by most everyone who comes in contact
with him.
His father, (███), and I were very close friends during which, I watched Toby grow from a
young boy, (where he sometimes would caddie for us), to a teenager, (where he attended my
wedding watching his father serving as my best man.)
When Toby graduated from college, I talked with his father about having Toby join me in the
Title Insurance business. In 1987 Toby came to work for me as a Commercial Sales Rep. wherein
I mentored him in all facets of our Industry.
Toby immediately showed me he was special, eagerly learning everything quickly and rapidly
becoming a leader and a mentor to other new sales reps.
In 2000, two life changing events happened for Toby.  First, we became managing partners for a
fledgling title and escrow operation in San Diego, and second, his father passed away.
While I was concerned one, or the other, may become a distraction, Toby showed his ability to
adjust and adapt quickly, showing more concern for the new employees under our leadership,
pushing us to succeed, so everyone could keep their jobs during the tough economic conditions
at that time, instead of dwelling on any personal struggle he may have been going through, that
could interfere with our goals and objectives.
I remember being invited by some of our real estate clients to travel to Cuba, (circa 2004), on a
US Government sanctioned humanitarian mission. I informed everyone that I would not feel
comfortable in Cuba, so I backed out, but Toby went eagerly anyway.
Their mission was to deliver medicine and blankets to various Orphanages.
When Toby returned back home, I remember telling him "you're a far better man than I will
ever be for making a trip like that." He just looked at me and said it was an experience he will
never forget, and well worth any inconvenience he encountered, because the look on those
children's faces when they received new blankets, was heartwarming and well worth it.

I have recently witnessed a change come over Toby, wherein he is sometimes despondent over
the possibility of not being able to continue his career in the Title Industry.  The stigma
associated with that possibility, has caused pseudo friends, as well as some clients, to go silent
or become aloof, when his name comes up in a conversation.

Although Toby has admitted guilt to this crime, I would be remiss in not stating that it was completely out of his character. In all the years I have known him, Toby has led an honorable, upstanding life.

Toby has lost his job, his license to procure title and escrow business, and his ability to provide for his family in the manner that he was accustomed to, together with the professionalism that was synonymous with his name.

I do not see how it would be appropriate or beneficial to anyone, to impose any further punishment on Toby. The man I know has already been punished enough in my opinion.

My hope is that I have somehow made an impact on the decision you have to render, and help supply justification for you to find leniency, for my very dear friend.

Finally, I want to thank you for taking the time to read my letter and allowing me the opportunity to share my thoughts on this important matter.

I am hopeful that I have adequately conveyed my feelings about how I feel about Toby Macfarlane and the kind of man he is.

Yours truly,

Jim Crestani

LETTER REDACTED IN WHOLE

To the Honorable Nathaniel M. Gorton
c/o Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkeley, California 94710

Dear Judge Gorton:

My name is Conor Evans and Toby Macfarlane has been a family friend and mentor to me throughout my entire life. I am a native San Diegan, 25 years old and have been a commercial real estate broker since graduating from the University of Arizona 4 years ago. I am aware that Toby has pleaded guilty to the college admissions scheme.

My purpose for writing this letter is to hopefully shed some additional light on the quality of Toby's character and share some examples of how he has made such a positive impact my life. I have been lucky enough to know Toby for a very long time and our families would routinely get together for various celebrations, holidays and life events. My dad and Toby are both proud USC alumni and many of our family events were centered around cheering on the team or watching the games together. Toby has always been one of the most generous people that I have met and would go out of his way to make any event or get-together memorable and special. He once surprised my family with tickets to the Rose Bowl game to see our favorite Trojans play and would routinely host us in his backyard for games on the road. Toby also entrusted our family to annually house sit their beautiful home, and we would look forward to having a 'staycation' year after year. We would always show up to a house stocked with food and supplies, complete with a friendly note saying to make ourselves at home and thanking us for what we saw as a vacation. As I grew older and started showing more interest in the business world, Toby went out of his way to mentor me and give me solid advice. He would routinely check in with me while I was at school in Arizona and request re-occuring coffee meetings with me when I was back in town. He loved sitting down and hearing what I was passionate about and then trying to connect the dots with any contacts he had in his own network that could help. He generously opened doors for me that otherwise would have been shut and I have many of my business connections to thank to him. But what really made this exercise most impactful to me was the genuine nature in which he had an interest in my growth and success. He wanted me to succeed and it was evident by his continual efforts to put me in positions where I could find success. Toby set the perfect example of how you can elevate others by positivity and showing genuine interest. Asides from my parents, there is no one else in my life that I would attribute as being a bigger mentor to my life than Toby.

I can only speak to my personal experiences of how positive of an impact that Toby has made on my 25 years of life, but am truly blessed to have had the pleasure of knowing him and the rest of his family for as long as I have. I know that Toby has gone through a lot recently and this news has been extremely difficult and shocking to hear for my family. Toby has always been a proud family man that puts others ahead of himself and I know that the recent headlines have been embarrassing to his legacy. Toby always taught me that you are only as good as your reputation, and I'm sure that he is most saddened to see his reputation tarnished through these recent events that have ripple effects on ███ and ███ I'm hopeful that the punishments that have already been instigated and subsequent consequences felt by Toby and his family will constitute a fair punishment. I'm sure that Toby's career will be greatly affected by these punishments and know that his reputation will take years, or perhaps a lifetime to rebuild. I'm sure that Toby would take it all back if he could and know that any actions were a direct result of his best wishes for his family and children. I thank you for your consideration and time reading this letter and I'm hopeful that it can paint a picture of how positive of an impact Toby has had in my life as a friend and mentor.

Yours truly,

Conor Evans

Robert R Evans

████████████

████████████

June 3rd, 2019

To the Honorable Nathaniel M. Gorton

c/o Arguedas, Cassman & Headley, LLP

803 Hearst Avenue

Berkeley, California  94710

Dear Judge Gorton:

My name is Rob Evans and I am a friend of Toby Macfarlane's. I am a former Naval Officer and current software executive with Dell Technologies. I have known Toby since 1982 and consider him and his family close personal friends. I am aware that Toby has plead guilty for his part in the college admissions scheme.

The purpose of this letter is to express my support for my long-time friend who I know is devastated by the recent events. My family and friends were shocked by the recent revelations because is it extremely out of character for Toby to have done anything unethical. Toby has been unwavering in his generosity with his time and counsel for me and my family during various times during our life. He is one of the few people that I know who would literally drop everything at a moment's notice to help a friend or family member. A couple of examples:

- When my son tore his ACL and MCL, Toby was relentless in helping us find a Doctor who specialized in sports medicine and assisted with ensuring he had the proper care.
- During a difficult time in my career, Toby graciously volunteered to loan our family money with no questions asked and no limitations (thankfully we did not have to receive a loan).
- I know that he has been very active in the community with non profit organizations and contributions of his time, energy and finances. I understand that he and his family traveled to Africa to do everything possible to ensure clean drinking water for local villages which included digging of wells and financing additional well construction.

A few years ago, I wrote Toby a heartfelt letter about how much our friendship meant to me and my family. I made the statement that my wife and I have never heard anyone utter a bad word or speak

negatively about Toby in any capacity. It's quit a testament to Toby that he has lived his life in such a way that it is possible for us to make such a claim.

I would like to ask for your Honor's consideration of Toby's long standing history of unquestionable ethics, honesty and loyalty to his friends and family when considering sentencing. I know that Toby has suffered a lot already with the public humiliation, loss of his Title license (after 32 years), business partners and financial institutions dropping him and a myriad of other embarrassments. I know that Toby is incredibly remorseful for his actions. I would hope that Your Honor will consider Toby's heretofore stellar life that he has led while considering if additional punishment would be of any benefit.

Thank you for your gracious consideration for my most trusted friend.

Sincerely,

Robert R. Evans

June 27, 2019

To the Honorable Nathaniel M. Gorton
c/o Arguedas, Cassman & Headley
803 Hearst Avenue
Berkeley, California 94710

Dear Judge Gorton,

My name is Robert Farrior. I have been an active Commercial Real Estate Broker for over thirty years. I have known and I have done extensive real estate business with Mr. Macfarlane for the majority of those years. I am aware that Mr. Macfarlane has accepted responsibility and recently pleaded guilty to some charges in the college admissions case.

The purpose of this letter is to give you some of my insight, knowledge, and thoughts about Toby Macfarlane. First of all, throughout the years, Toby has always been considered by me and many others in the industry to have the highest integrity, work ethic and trust in the Title Insurance business in San Diego. He has always been extremely well respected.

Toby has a lot of competition in the Title Insurance business in the San Diego area, but he has always been ranked number one in San Diego for the previously mentioned reasons. In the past, I have placed complete trust and faith in more transactions than I can even count with him and he always kept his word and he never failed me on anything. Much of Toby's business with me and others was done with a handshake where his word was always his bond.

There have been so many times that I have seen Toby go overboard when he didn't have to, to help people. On two different occasions, some years ago, Toby helped two different elderly ladies in two different transactions where, because of their background and life experiences, every penny counted for them at the close. Toby voluntarily cut his Title Insurance fees on both transactions drastically just so that they could have more funds at the close of escrow. These fee reductions came directly out of his pocket. They were both so very grateful for what Toby did for them. That is something that I will always remember about Toby.

Toby really helped me at one time too. I had to sell a place that I owned quickly and I was in a situation where I actually had to pay to close the sale. This was more common a while back. My problem was that I was short of funds and I didn't have enough funds to close the escrow. Toby chipped in, out of his pocket, to make up the difference so that escrow could be closed. This action by Toby saved me a lot of grief and possible embarrassment later. This is the kind of person that Toby is. Toby was always there and trying to help people when he saw that they needed it.

In addition, Toby is well known for being generous to charity, participating in charitable events, and he has always made a special effort to help those in need and those less fortunate. His past active participation in Big Brothers has helped mentor and uplift the lives of an untold number of young and sometimes at risk males that had no responsible adult male to turn to in times of need. Many lives were changed for the better because of Toby's participation. Toby's participation in the Make a Wish program helped grant numerous critically ill children a chance to help reach an otherwise unreachable wish. Toby's tireless efforts to help raise funds for tennis courts for disadvantaged youth at Barnes Tennis center and giving them the chance to learn and play the game of tennis has always touched me. Giving back to help others has always been a core value in Toby's life.

Toby has worked so very hard all of his adult life to build up his business and reputation to where it was until recently. He has already paid a severe personal price because of this conviction. Toby and his family have been devastated. He has been humiliated within the San Diego business community as well as San Diego in general. He has suffered from a job loss, loss of his license, and he has suffered serious monetary consequences. This will haunt Toby for the rest of his life.

I have personally felt so bad that even with all of his good works, kindness, and help to other people as well as helping the underprivileged throughout his life, that these good works can get washed out under during a situation like this.

I have talked to Toby several times since the college admissions case broke open. I can't even adequately explain just how remorseful Toby has been because of this situation. He has openly expressed sincere contrition for his actions and I can tell you that he is a different person today. Toby does not need to learn any lessons. He gets it.

Because of this situation in its entirety and the kind of person that Toby Macfarlane is, I would respectfully and humbly plead with your honor for mercy and leniency for Toby Macfarlane in this case.

Sincerely,

June 5, 2019

To the Honorable Nathaniel M. Gorton
c/o Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkeley, California 94710

Dear Judge Gorton:

My name is Patrick Ford and I have been a close friend of Toby MacFarlane for nearly 40 years.

I am aware that Toby will plead guilty to charges pending against him and has entered into a plea agreement with the US Attorney. It is my understanding that the US District Court will evaluate the US Attorney's suggested sentencing and consider Toby's acknowledgement of responsibility as well as the significant contributions Toby has made to the community and to society in general.

I'm pleased to inform the Court of my observations of Toby over nearly 40 years.

Toby and I both grew up in humble circumstances, and through hard work, encouragement from our families, and determination were fortunate to matriculate to the University of Southern California (USC). Toby, I, and a number of friends with similar humble backgrounds soon became close friends. Over the years we have celebrated marriages and children's births, mourned for lost parents, and counseled each other over divorces and family or business setbacks.

Certain traits are required to maintain lifelong friendships: selflessness, empathy, a commitment to better your friend, honesty, and a compassion for helping others when they need it most.

Judge Gorton, I have seen these characteristics not only applied by Toby in our friendship, but consistently with all those who interact with him. I have witnessed Toby:

- Make a 12 hour flight half-way around the world to spend a weekend with his daughter because she was homesick
- Transport and manage 10-12 teenage boys (including his son) at sporting events in order to create meaningful comradery for these young boys
- Counsel and comfort people who he has known for hours (not years) over a personal setback
- Treat an Uber driver or restaurant server with the same amount of respect and consideration that he would afford a CEO or an elected official

Luke 12:48 states "For unto whomsoever much is given, of him shall be much required."

Toby fully subscribes to the above, and he has acknowledged his shortcomings and taken responsibility for his actions. Toby has disappointed his community, his family, and most importantly, himself. With 40 years of friendship as a basis I submit that Toby will not return to this Court in the future, will be an example of integrity in everything he does, and will continue to demonstrate compassion and care for his family, friends, and society in general.

Judge Gorton, thank you for considering this submission. My hope is that the Court considers Toby's life in totality from being a devoted father, a considerate and caring friend, a philanthropic and community leader, and a person we desperately need in our day to day lives.

Very truly yours,

Patrick J Ford

# PACIFIC EQUITY CORP.
### Investment Real Estate Services

June 19, 2019

To the Honorable Nathaniel M Gorton
c/o Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkley, California 94710

Dear Judge Gorton:

My name is John Garner (JG to Toby) and I have been a friend and business associate of Toby Macfarlane (Toby) since moving to San Diego in 1989. Toby was one of the first business associates I met in real estate when I was relocated to San Diego as a Regional Manager of a major Real Estate Investment Brokerage firm.

When relocated to San Diego, I was introduced to Toby who had an exclusive relationship with our entire San Diego office as the Title Representative. The prior San Diego manager of 15-years originated the relationship and couldn't speak more highly about Toby.  Not only as a Title Rep, but the person. His honesty, thoughtfulness and sincere caring and concerns to support the entire office and clients was exceptional.

After meeting Toby, it was easy to recognize why he was able to maintain that relationship. It was easy for me to accept the recommendation. After getting to know Toby personally, it was easy and natural to want this person as a trusted, loyal friend. Your Honor, if you were able to sit alone with Toby, it would be easy for you to recognize the same.

I am aware that Toby has pled guilty to the college admissions scheme. He didn't say it but, I believe he chose this to close a horrendous chapter of his life as quickly as possible. What he cannot mitigate is the damage and shame he and his family will shoulder thereafter.

I've watched Toby at a personal cost and humility, walk away from, even when wronged, every bad or negative situation. One example was when I left management.  My replacement demanded the entire office use his Title Rep. After a decade of exclusive office relationships, Toby was faced with a sudden betrayal and new managers instructions to "not allow anyone but his Title Rep" into the office.

Then and still today your Honor, Toby Macfarlane never spoke badly about that manager's actions or voiced a negative comment. He only responded by saying "the other Title Rep was a good guy." To the managers dismay the agents stayed loyal to Toby and that speaks loudly as to his ethics and character beyond the business. It is remarkable as a young man to have that discipline to take the high road.

I'm writing this letter hoping to convey the sincerest forthright picture I can on two pages about a man I've known for 30+ years. One of the few people I know that never put himself before another. I am saddened that he and his family have suffered immensely already. This quiet and humble man never sought attention as long as I've known him. Now, as a result of this case, Toby can't go out without people turning heads, mumbling or questioning directly.

PO Box 235858, Encinitas, CA 92023-5858  •  Office (760) 230-2668  •  Fax (760) 230-2669
jgarner@pacificequitycorp.com  •  Broker Lic. 00848916

### PACIFIC EQUITY CORP.
Investment Real Estate Services

I understand he has lost his Insurance License to practice – forever.

Will carry a felony conviction on his record – forever.

Faces the possibility of incarceration and substantial fines.

Your Honor, I know this is a high-profile case with famous people and trust many things I don't know about the case, but Toby Macfarlane has suffered severe consequences from his actions in so many ways already. His family, business reputation and desire for anonymity is gone – forever!

When I saw him a couple weeks back, despite all his consequences thus far, my friend never spoke a word to blame anyone else in the case, make an excuse for what he had done or point a finger trying to pawn it off on anybody.  He owned up to it all and preparing for your decision.

Please consider his long history of good citizenship, good will to others and just one of many examples above of a lifetime of good, ethical and moral decisions. I hope this letter offers a little additional understanding of the punishment he has already suffered for his actions and no need to impose more punishment.

Thank you, your honor for taking the time to hear from friends and family of Toby Macfarlane. This is who he really is. I appreciate your consideration and thoughtfulness when making your decision.

Respectfully,

John Garner
President/Broker

To the Honorable Nathaniel M. Gorton
c/o Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkeley, California 94710

Dear Judge Gorton:

My name is Lorena Gaxiola, I've had the pleasure of knowing Mr. Toby Macfarlane
(Toby) for a few years.

I was introduced to Toby in the summer of 2017 through my childhood friend ████
████ ███ and Toby have been in a relationship for a while however, I happen to
also share many local acquaintances in San Diego with Toby aside from his personal
affiliation with my longtime friend ████

I am fully aware of Toby's charges and his current legal issues. I feel sadden by his
position and possible effect to his future and his children's wellbeing.

The purpose for my letter is to share my personal experience and the character of our
friendship with your legal team in hope that you could see the kindness of his heart.

I am a local San Diegan and a permanent resident of the United States. I currently live
abroad in Sydney Australia but continue to visit San Diego often due to family and
business matters. Without hesitation Toby and ████ have always welcomed me in their
home with open arms, shared their home amenities, such as: food, water and other
outgoing cost during my long stays, he has loaned me vehicles, and provided me with
food and most importantly sharing his time and company with me.

This year, I was unfortunately diagnosed with cancer and had to visit San Diego after
my first chemotherapy to solve many business matters and prepare my local clients for
the long break I would have to endure during my health condition. My medical team in
Sydney were concerned of my travels and my wellbeing but I assured them that my
friend Toby would make sure I would remain safe during my visit overseas and how he
would look after me in the event of a medical emergency.

When I arrived in San Diego, Toby prepared a special room for me in his home where I
could feel comfortable and safe. He was available in the event of any medical aid and in
making sure my diet would be of top priority. Not only was his home a safe retreat for
me but morally he offered incredible support and I am forever grateful for his generosity.

Toby has been an incredible partner to my dear friend ████ He is loving to her family,
caring of her son, and has embraced her culture with respect. ████ is happy and I
couldn't wish for a better partner for her.

1

I feel for Toby and his situation because I know what a loving and caring father he is. In my personal experience my stepchildren went through a lot of emotional distress after their parents' divorce. My first stepdaughter abused drugs and was self-harming at the age of 17, I can't tell you how many times we rushed her to the emergency room scared she had cut too deep and would die. At the age of 15, my second stepdaughter suffered from anorexia nervosa, to the point of being admitted to the hospital for months to be fed by a tube. My husband and I worried to death for them and their future. Toby's heart is bigger than his body and I hope that you can spare him of any further financial and emotional distress so he can focus on amending the emotional hardship his children ███ and ██ are enduring.

I appreciate your time.

Yours truly,

Lorena Gaxiola

To the Honorable Nathaniel M. Gorton
c/o Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkeley, California  94710

Dear Judge Gorton:

My name is Todd Glick.  I've been friends with Toby MacFarlane since 2010 when we started coaching together in Little League baseball.  I spent over 10 years managing teams in little league and travel baseball.  I am aware that Toby has pleaded guilty to the college admissions scheme.  However, I felt it was important for you to know my relationship to Toby and the type of friend and person I consider him to be.

I asked Toby to be one of my assistant coaches in 2010 because I was told he would be a good influence and had a tremendous amount of patience which is critical in coaching 10-11 year old kids.  I was very particular about who I chose as my assistant coaches since I took the responsibility of coaching kids very seriously.  I couldn't have asked for a better assistant or friend.  All the kids liked Toby and respected him.  He was a good example for the kids because he cared and took a personal interest in all the kids.  I put a lot of demands on my coaches in terms of time committed to the team and my coaching.  He was dependable and reliable.

I'll never forget how our team hadn't won a game after the first few weeks and I was extremely frustrated and I called Toby and said we need to get together and figure this thing out.  I had gotten on the kids a lot out of frustration.  I can't tell you how many times kids would come up to me and say, "Coach Toby is so nice".  Toby was always the voice of reason for not only me, but for the kids too.  He has a great way of keeping things in perspective and helped to always keep me "in check".  We met the following day to discuss the best way to move forward with the team and what we need to do to turn things around.  Our team went from the last team to win a game to winning the Championship.  Toby spent countless hours on the phone with me discussing strategy, handling the kids, and coaching.  It was a memorable season that is still brought up to me today from not only families from that team, but also people that live in our community.  It was a "magical season" and Toby was a big reason why it occurred.  He had a large impact on that team, those kids, and the families in our community.

Toby has also been a good friend.  There were several times in the past where I asked him to meet with me to provide advice and guidance on my personal business interests.  He always makes himself available and genuinely cares about my best interests.  I trust him implicitly.  I've always valued my friendship with Toby because I know if I needed anything, he would be there for me.

I can't speak to anything that occurred in this case.  However, I can speak to the type of person Toby is as a father and friend.  He's an extremely caring and loyal person.  I know he's deeply regretful and saddened for his actions and the ramifications it's had on everybody involved.  There is no question that Toby will carry the burden of what he

did for the rest of his life and work to become even a better person. I will always consider Toby a good friend and somebody that I can rely on for anything. I believe he's had a positive impact with anybody he's been involved with in his life. I hope you consider Toby's strong standing in the community and the quality individual that he is when determining his punishment.


Sincerely,

Todd Glick

To the Honorable Nathaniel M. Gorton
c/o Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkeley, California 94710

Dear Judge Gorton,

My name is Steve Hougard and I am writing on behalf of my family to tell you a little about my friend Toby Macfarlane. I first met Toby when we were introduced through the real estate business over 25 years ago. When doing business, I have always found Toby to be a positive, engaging man who works with the goal to make every business transaction a win for everyone involved. He has been a great team player, and good person to be around and to learn from.

Because of our ongoing business relationship, eventually our wives met and became friends so our business relationship grew into a family friendship. Our first children were born just days apart and we spent a good deal of time together in that season of life. The Macfarlane family was fun, generous with time and resources and part of a positive, productive and charitable community. I would often get a call from him inviting me and my son to join him and his son for a football or baseball game. We shared family dinners, kid's birthday parties and annual trips to the pumpkin patch for at least 15 years. His dedication to his family has always been first and he has worked hard to provide them with every possible opportunity.

I understand the situation that brings him to come before you and that he has pleaded guilty in the college admissions scheme. This is the exception, not the norm in his character and conduct. I do not know him as a man who takes short cuts or manipulates circumstance for his own benefit. I look forward to continuing to do business and life with Toby because the norm for him is a life marked with dignity, ethics, morality and integrity.

The financial implications and damage to reputation caused by Toby's involvement in this scandal are deep and broad. He has talked with me about regret over his decisions, what brought him to the place that he would make those kind of choices and the shame and embarrassment he feels because of them. But he has also expressed to me that the consequences he personally is encountering are not his highest concern. Trying to repair the damage done to his children's sense of value and their knowledge that he believes in them and their abilities is a priority.

All of his good intentions and right motivations got lost in bad decisions and the consequences for himself, his ex-wife and his children are devastating. Some of the damage is so personal and painful for him and his kids that I am not comfortable writing about it. His communication with them is that his decisions came from his own pride and not from their lack of intellect or ability. He is also painfully aware that his decisions

have effected people far beyond his own family and that he will never fully know the scope of that impact.

I see a brokenness and a humility in Toby that I haven't seen before.  As his friend it is difficult to watch.  However, I know it is from that place that he can rebuild a healthier, happy life.  I look forward to seeing him overcome the consequences of his choices and have a real, honest, deep understanding of the things that were out of order in his life which led him down the road to this place.

I respectfully request that you would consider these insights as you make your decisions in regard to his future.

With sincere gratitude,

Steve Hougard

David M. Huffman
████████████████
████████████████

The Honorable Nathaniel M. Gorton
c/o Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkeley, CA  94710

Re:  Toby Macfarlane

Dear Judge Gorton:

The undersigned is a family law attorney who practiced in San Diego County for 42 years before retiring on May 1, 2018 (California Bar No. 69026).  A year or two before retiring, Mr. Toby Macfarlane was referred to me for assistance in representing him in a marital dissolution proceeding.  I was retained by Mr. Macfarlane and represented him until the completion of his divorce.

I am writing this for the Court to perhaps provide a little different perspective of Mr. Macfarlane. Based upon my years of experience, divorce attorneys sometimes see the worst in their clients and sometimes the best.  For Mr. Macfarlane, I saw the best of an individual despite the fact that he and his spouse obviously had great difficulty in their marital relationship.

The Court should know that I have no knowledge of the facts involved in the matter before the Court other than what I have read in local newspapers or seen on local television news reports.  Mr. Macfarlane's situation has received widespread local media coverage.  I am relating the facts from my personal knowledge.

Mr. and Mrs. Macfarlane had a complex marital estate.  Mr. Marfarlane was indisputably the one who handled  the family's financial affairs.  From the beginning, Mr. Macfarlane promised that he would be an "open book" and voluntarily provide all relevant information to Ms. Macfarlane and her legal team.  Based upon this foundation, counsel (Ms. Macfarlane had two counsel from the same firm) and both parties began to meet jointly to discuss/resolve temporary issues and develop the framework for a consensual resolution of the divorce.  Accordingly, we started by Mr. Macfarlane gathering, organizing and presenting to Ms. Macfarlane and her counsel extensive documentation for her team to analyze the nature and scope of the community estate, related tax issues (basis,  potential capital gains, etc.), valuation and other information which I believed Ms. Macfarlane's team would need to do their due diligence.  The documentation was extensive, but very focused so that Ms. Macfarlane's counsel and her forensic accountant (Tony Yip) did not have to spend days reviewing extraneous documents.  After Ms. Macfarlane, her counsel and Mr. Yip had adequate time to review the documents, we had several joint meetings for Mr. Macfarlane to walk everybody through the documents on an asset by asset basis and to informally answer all questions which Ms. Macfarlane's team had.  Mr. Macfarlane actually meet with

Mr. Yip without counsel present to answer all questions that Mr. Yip had. This was highly unusual for me, but it shows the extent of Mr. Macfarlane's cooperation.

After Ms. Macfarlane's team felt they had sufficient information regarding the community estate, Mr. Macfarlane with everyone's consent prepared two lists of the entire estate: List A and List B. Each list indicated specific assets, their estimated value and potential tax consequences associated with each asset. In doing so, Mr. Macfarlane indicated that Ms. Macfarlane could choose either list and that Mr. Marfarlane would take the remaining list since he believed his proposal divided the lists as fairly as possible. Mr. Macfarlane again made himself available to Ms. Macfarlane's team to answer all questions. Ms. Macfarlane decided to accept one of the lists and Mr. Macfarlane took the remaining List. The marital dissolution action was settled on this basis.

I would like to offer a couple of observations regarding this process. First, despite their poor marital relationship, Mr. Macfarlane repeatedly expressed concern for Ms. Macfarlane and wanted her to be well taken care of after the divorce. Secondly, this process would not have worked if anyone believed Mr. Macfarlane was not completely honest and reliable in providing information and documentation. In my 42 years of practice, I often encouraged clients to approach their litigation in a collaborative fashion, but I am not sure that I ever had a case with this level of complexity nor a client as straightforward and honest as Mr. Macfarlane. The process would have failed miserably but for Mr. Macfarlane's honesty and actions to educate Ms. Macfarlane and her team so they could make sound decisions.

Finally, as I worked with Mr. Macfarlane, I began to realize how well regarded he is/was in the San Diego community. I understand that it is the Court's responsibility to sentence Mr. Macfarlane. I would never be so presumptuous as to tell any judicial officer what they should do in this regard. However, I do feel that based upon the widespread coverage in the San Diego media that any sentence the Court imposes will impact Mr. Macfarlane less than the embarrassment and remorse that he has already experienced. I also know that Mr. Macfarlane is very close to his children and personally worry how this will affect his young adult children.

I wish to thank the Court for taking the time to read this letter and considering the information that I have shared.

Very truly yours,

David M. Huffman

June 17, 2019

To The Honorable Nathanial M. Gorton
℅ Arguendo, Cassman & Headley, LLP
803 Hearst Avenue
Berkeley, CA. 94710

Dear Judge Gorton:

My name is Steve Huffman and I am one of Toby MacFarlane's best friends for over 30 years. The purpose of this letter is to share some of the background on Toby and his long standing values and ethics in business as well as his generosity and contributions to his friends and business circles.

Toby and I met in 1991 through my role as a California Real Estate broker and his role as a title representative at a local title company. Toby's business acumen combined with his values and ethics have always been a part of dozens of escrows and title orders that we have worked together on over the years. Toby's contribution to the San Diego real estate industry and dozens of people in our industry continues to this day. Additionally, Toby has invested with me in a partnership whereby his investment was paramount in the complete revitalization of a 121 unit apartment building in Downtown Palm Springs in 2016, called Latitude 33. Because of Toby's investment in this project, the entire downtown area changed and the property earned the "Most Improved Business Award" in 2016 from the Palm Springs Chamber of Commerce.

On a personal side, I have seen Toby pour his life into his wife and children, hoping for the best for his kids and family. I was there at his side as he walked through a very painful divorce just a few years ago. He has been so dedicated to his wife and children for nearly 25 years, but despite huge efforts through separation, rekindling the relationship for two years, and then having it end in divorce was the most painful thing for Toby. His wife simply did not want the marriage any more, but Toby continued pouring his life into his kids and also the new role as "friend" with his former wife███████ Despite this heartbreak, Toby continues to have an incredible positive influence on family friends as well as dozens of children at his alma mater. Toby is constantly showing these people how to live generously and how to treat friends even better than himself.

Judge Gorton, I believe Toby has the utmost level of morals and values in his life. Toby's passion for his children to have the best education possible resulted in getting caught up in the mess he is in, and to this day I strongly believe he was simply trying his hardest as a father to give his kids the best. I am hopeful that you will consider his incredible contributions to our real estate industry in San Diego as well as the contributions to his friends and family circle when determining the outcome of this unfortunate event. Toby has already suffered through the loss of his job at the title company, the difficulty in obtaining new financing in his real estate dealings,

and the impact of personal friendships. I believe he has suffered through enough and hope to see some leniency given his excellent record both personally and professionally for so many years. He has expressed to me personally how unbelievably remorseful he is for going too far in trying to do what he thought was the best for his children. Looking back now, he has told me that he is remorseful for these actions.

As a result of this illness, ███ did not speak with his father for nearly 20 months, and just recently they reconnected. Toby's continued mentoring and parenting is paramount right now for ███ to succeed, and ███ is once again living with Toby. I am very concerned that any incarceration could be a huge setback for ███ I hope you will consider this as well.

I can be reached at ██████████ should you wish to hear more stories and/or examples of positive Toby's life. Thank you in advance for your serious consideration of these facts as you move forward with Toby in your courtroom.

Sincerely,

Steve Huffman

May 22, 2019

To the Honorable Nathaniel M. Gorton
c/o Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkley, California 94710

Re: Toby Macfarlane/ letter of support

Dear Judge Gorton:

My name is ▨▨▨▨▨▨ I am Toby Macfarlane's girlfriend. I met Toby in July 2016 and a couple of times more in the following months. We formally started our relationship March 2017 and we have been living together since December 2017.

I am fully aware that he has pleaded guilty to the college admissions scheme.

I write to you today with a most honest and open heart in hopes that you get to know a little more about Toby and consider this when passing your judgement on him.

I fell in love with Toby because he is like no other man that I have known before. He is an amazing father, a loving partner, and honest, faithful, smart, integral man.

He was raised by a single mother who taught him to be a responsible hard working, successful business and family man. As a single mother myself, I am very protective of my son. When I finally introduced ▨▨▨ (my son, 19 years old now) to Toby; my son (who has never liked anyone as a boyfriend for me) immediately said "I like Toby, he is a keeper, you need to learn how to cook". Since then Toby has opened his heart to my son and has become the best male role model for him. In fact, I'm a little embarrassed to say that now my son calls Toby for advice before calling me.

Toby together with his ex-wife, raised two beautiful loving young adults. They both have accepted me and my son in their father's life with lots of love and respect. I am proud to be a part of this mixed family that Toby and I are creating. Toby's son, ▨▨▨ is an extremely sensitive and vulnerable young person who has been suffering through severe emotional issues the whole time I have known him. Toby is a wonderfully supportive and understanding father, and I know how painful it has been for Toby to watch ▨▨▨ struggles. I think that one of the hardest things for Toby as he contemplates his future is the possibility that one consequence of his misconduct could be that Toby will not be able to be present for ▨▨▨ when ▨▨▨ needs him.

I've gotten to meet all of Toby's friends, mentors and colleagues and they all have nothing but praise for him. They have shared wonderful stories about how Toby has made a positive impact in their lives. From helping a friend through divorce, the loss of a parent to helping build a business to participating in charity events and community fund raisers for their children.

I hope you can consider Toby's good character and good faith as a loving responsible father in this matter. The consequences both professionally and socially of Toby's conviction have already been severe and most importantly has affected his family and our family.

He has lost his job of over 30 years, he has lost business transactions, business and social relationships. His character has been questioned all over the media when he has always been a very private person. He is now in debt with substantial legal fees, we have missed various family events abroad. His 30 plus years of ties with his loving college Alma matter have been shattered.  But most of all, him and his children are suffering emotionally from the heartbreak of this scheme.

Toby and I have talked for hours and hours about the flawed decision-making and bad choices he made when he decided to participate in this scheme.  I know that he is truly remorseful for his mistakes. Although it is no excuse, I'm convinced that Toby was motivated only by concern for his children.  Toby has a strong sense of fairness; and I know that he has spent untold hours of therapy and introspection trying to understand how he failed to see and consequences of his actions.

Over the course of a lifetime, Toby has earned the love and respect of virtually everyone who knows him.  His children and I love him and support him, we are all working to get thru this emotional process together as a family unit.

I don't believe such a good hearted responsible man and citizen like Toby deserves any further punishment and I pray that when you see the whole person, not just his wrong-doing, you will agree.


Thank you very much for taking the time to consider my letter.
Sincerely,





Kenneth London, CEO
7837 Convoy Court, Suite 200
San Diego, CA 92111
O 858-751-6311/fax 858-571-8463
CA. Lic #B-819549
klondon@WorkRight.net

To the Honorable Nathaniel M. Gorton                          June 9, 2019
c/o Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkeley, California 94710

Dear Judge Gorton:

My name is Kenneth London and I am a General Contractor/Real Estate Investor and I am a friend of
Toby Macfarlane's. I met Toby about 5 years ago when his partner hired me to perform a renovation
for an apartment building that Toby invested in. We quickly realized we had a lot in common and
became instant close friends, almost brothers. I got to know his family and he mine as we forged what
I can only say is a lifelong bond. He has spent considerable time at my home around my wife and
children.

I understand that Toby has pleaded guilty to the college admissions scheme and I wanted to reach out
to you to express my support for Toby. I feel compelled to help you understand that Toby is a terrific
and caring person. It is my hope that people are not only judged by their mistakes, but by the larger
body of work that constitutes their life. Toby clearly excels when it comes to kindness, honesty, and
concern for others.

They say you see a person's true colors when it comes to having money dealings with them. I believe
this is true. A few years ago I was buying an investment property and was in a bit of bind when it
came to closing the transaction. My bank was late with the funding, and I was about to forfeit a
significant deposit if I could not perform. I was quite stressed as you can imagine. One day I was
playing tennis with Toby and I mentioned that I was having this issue and he immediately told me it
was no problem, that he would lend me the money. ███████████████████████████████████
████████████████████████████████████████████████████████████████████████ The next week
Toby transferred the money to me so I could close my transaction. I called him up and said we should
write up a note and have a formal transaction memorializing the details and he told me that my word
was just fine. I was blown away—who lends that kind of money on a handshake?! It was an
incredible gesture. A few months later I of course paid him back. It really showed me that this is a
special kind of person who really sees and believes in the best of people.

Toby is very kind and compassionate. I had a good friend who was incapacitated from a stroke related
to be terminal brain cancer. Toby knew how much this guy meant to me and although he did not know
him very well, he took time out of his busy schedule to visit and spend time with him at his house
during his waning days. He brought him food and supplies on several occasions. He even shuttled
him 45 minutes each way to a surprise birthday party that my friends were throwing me just so he
could spend a half hour with me. It was a very kind and thoughtful gesture.

I have very few what I would call 'true' friends. Toby is one of them. My criteria is based on how thoughtful, honest, reliable that person is and how that person treats others. Toby excels in all those areas. He is an outstanding human being who would do anything for anyone.

I have noticed a real change in Toby as a result of this case over the last few months. He is humbled and seems very remorseful. We speak frequently and I fell he is genuine in his feelings. He has never been in a position like this in his entire life. Good people can make bad decisions. Judge Gorton, please consider that this is a good man whose life revolves around his family especially his son and daughter. His kids worship him and rely on him. He is great father and even better person.

San Diego is a very small place. Toby has unfortunately been judged by everyone around him. He has spent a lifetime successfully creating a large body of positive impacts on the community. That image has suffered greatly from this college admissions scheme. I really do not see a benefit for anyone with further excessive punishment.

I really appreciate you taking the time to read my letter. I sincerely hope you take into consideration the kind of person Toby Macfarlane is as you make your decisions. Thank you again.

Yours truly,

Kenneth J. London
Friend

J. Dean Loring

██████████████

September 1, 2019

To the Honorable Nathaniel M. Gorton
c/o Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkeley, California 94710

Dear Judge Gorton:

My name is J. Dean Loring. I have known Toby Macfarlane for approximately 8 years. During this time, I have gotten to know Mr. Macfarlane through a variety of circumstances and interactions; as friends traveling together, dinner parties, family events and as an informal advisor to my role as founder and CEO of a 25 unit California based restaurant company.

It was with some consternation that I learned of Mr. Macfarlane's plead of "guilty" related to the charges levied against him in the admission's scandal. It seems quite out of character to see him going through such a well-publicized and emotionally challenging exercise. When I put together the facts as I know them, I am saddened by the misplaced behavior related to Toby's positive memories of his time at USC, combined with his ardent desire to have his own children benefit from such an esteemed institution. Toby is a genuine family man and has a uniquely close relationship with his children, ██ and ██ I have personally seen on many occasions his generosity and love for his children. They have the kind of close relationship few parents and children ever experience. To me, this is demonstrative of a high-minded character and generosity that few parents ever experience; a selfless devotion to the wellness of their family.

This generosity of spirit does not end with his family. Toby's positive demeanor and mindfulness in relating to others is an admirable quality. He finds positive in others and is comfortable with people from all walks of life. An example of this is when we were together dining at a restaurant last year, we overheard an elderly couple dining at the next table chatting about their 50th wedding anniversary. Toby became clearly overwhelmed with emotion at seeing this older couple expressing such love for each other after 50 years of marriage. He was clearly moved and expressed it to the elderly couple, offering to buy their dinner. Although the couple politely declined, everyone was clearly moved by the moment. I regularly see from Toby acts of kindness and generosity toward others, but this simple example best encapsulates his mindfulness toward others.

I urge you to consider the historical breadth of Mr. Macfarlane's character relative to an isolated misdirected behavior driven by the love of his children and his alma mater USC. This aberrational behavior is entirely inconsistent with lifetime of good citizenship.

Respectfully,

Ted Cassman
Arguedas, Cassman, Headley & Goldman
803 Hearst Avenue
Berkeley, CA 94710
(510) 845-3000

The Honorable Nathaniel M. Gorton
c/o Arguedas, Cassman, Headley & Goldman, LLP
Berkeley, CA 94710

Dear Judge Gorton

I am ███████████████, Toby Macfarlane's 80 year old mother.

Toby's plea of guilty to the college admissions scheme was a shock and heart breaking. I was in disbelief.   This is not the Toby I know and has been a main stay of my life through thick and thin.

While not having a father in the home since he was five and a mother who worked full time, Toby assumed many responsibilities and was a self starter and high achiever.

In high school he worked while playing on the tennis team and serving in student government.  When Toby came home for summer breaks in college he worked full time and took night classes to help with his class load the following year.

As a single parent for over 50 years, I have depended on Toby for many things.

Toby's assurance that he was always just a phone call away has meant the world to me.

- * He has been there for me through lung cancer, a broken neck and many surgeries.

- * He coordinated in-home care, repair projects and the purchase of new cars.

- * My independence would be extremely curtailed if Toby were not able to be an integral part of my life.

Toby has always been a willing and appreciated participant in my friends lives, welcoming them into his home.  He came to the aid of a close family friend providing financial assistance during a difficult divorce.

As Toby's mother, I am asking you to consider his commitment to his family, his friends, his professional life and the community.

Toby is extremely remorseful and acknowledges he has made a grievous error.

Thank you Judge Gorton for your consideration in this very serious matter.

Sincerely

LETTER REDACTED IN WHOLE

LETTER REDACTED IN WHOLE

To the Honorable Nathaniel M. Gorton
c/o Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkeley, California 94710

June 15, 2019

Dear Judge Gorton:

My name is Steve Malachowski. I have had the privilege of knowing Toby Macfarlane, and calling him a friend, for nearly 40 years. Toby and I first met while students at the University of Southern California. We liked and cared for one another from the start, and he became my "little brother" in our collegiate chapter of Sigma Nu Fraternity. It is important to note that me and my family have lived in Austin, Texas for over 28 years. We are far from most of those friends made during school days in Southern California. I can count on a few fingers the number of men that have continued to be actively involved in my life over those decades of living so far apart. Toby is one of them and I am thankful for him in my life. Certainly, I am sadly aware of the circumstances that Toby has brought upon himself as a result of his actions in the college admissions scandal.

It has been said that a person's reputation takes a lifetime to develop but can be tarnished in an instant. This letter is sent to you with the hope that you will consider a lengthy list of positive attributes from Toby's life so that his recent lack of judgement might be more clearly seen as an aberration of character.

As a man I know you must have that "one or two guys" that you would call if you found yourself in desperate need. Toby Macfarlane is one of those precious few men in my life. When I have ever had a need or request, Toby has always been front and center for me and my family. What follows is quite personal and difficult to say. Toby and I share a horrible thing in common in that we have both lost a loved one (him a sibling and me a daughter) to leukemia. During the time our family was battling for our daughter's life, Toby showed extraordinary care and compassion for me and my family that helped us face that battle.

Toby and I have also been involved in business transactions over the years. As you are no doubt aware, doing business with close friends carries added risk. In the times we have been involved in business together I found Toby to be a man of high integrity and one to honor his word. Sadly, these are not common traits in our world today.

Judge Gorton, I know that Toby is ashamed of what he did and is suffering the natural consequences of his actions. Of course, I cannot possibly know the exact thoughts of another person but believe Toby's remorse genuinely stems from his heart and that he fully appreciates the magnitude of the mistake he made.

Honorable Nathaniel M. Gorton, page 2 of 2, June 15, 2019

Thank you for your time and attention in reading my letter.  If I can provide any further or additional insight, it would be my privilege.

Sincerely yours,

Steve Malachowski

June 11, 2019

To the Honorable Nathaniel M. Gorton
Arguedas, Cassman, Headley & Goldman LLP
803 Hearst Avenue
Berkeley, CA 94710

Re: Toby Macfarlane

Dear Judge Gorton,

My name is Vincent Martin and I have known Toby Macfarlane for over 30 years. I understand Toby has pleaded guilty in the College Admissions case and wanted to share my thoughts and feelings.

I first met Toby at working at Southland Title. We worked very closely together at the beginning simply as colleagues as I was in a supportive role at the company. He was extremely easy to work with and always grateful for a job well done. We continued our relationship throughout the years and became great friends. After Toby and ████ married we spent a lot of time together and Toby became like a brother to me. His love of music and people are similar to mine and we sure did capitalize on that. Sharing great memories at my father's home in Alpine enjoying Hawaiian music and spending awesome moments with his dad, John, at the La Jolla tennis club who was truly genuine and generous man.

In the spring of 1996 I was offered a promotion into sales and only had a weekend to make my decision. I recall asking Toby his opinion and spent most the weekend at his home running pros and cons of how this would affect my life. Honestly that would prove to affect his life negatively as it was his business and clientele that would be affected by my promotion and departure from the customer support department. With all that being known Toby convinced me that this would be the best move for me and my career. In some ways my family and I owe my successes earned in my career to Toby as I will not be where I am today if it was not for spending that weekend with him which forever changed my career path.

Throughout the years Toby has always been someone I admire and earlier this year when I had made a decision to leave my current employer Toby selflessly urged me to reconsider as the company would be better if I would remain. Although I had officially resigned those conversations with Toby urged me to rethink my decision and with no personal gain afforded Toby, once again, I decided to stay at WFG Title. I believe he intuitively knew I'd be happier, healthier at work and at home if I would reconsider my resignation. I am forever grateful!!

When this case became public I met with Toby weeks following to discuss what had happened. We met in my office and I hugged Toby, his sadness and remorse were so apparent. We talked for a while and at times both teared up. He was emotionally drained and even fearful. Shortly thereafter Toby and I were on a flight returning from an awards conference in Las Vegas when he informed me of his decision to plead guilty that morning. While in flight he was extremely sad and pensive informing that he would possibly be going to prison. This is sad and broken man and this case has, in my opinion, had an irrevocable effect on him. Also, when Toby's insurance license was recently suspended I received a phone call from him informing me of the letter received from California DOI. This decision and subsequent departure from the company has hit Toby hard.

For as long as I have known Toby, this significant error in judgment is not consistent with his character. He has always been a devoted father, son and friend, a person with high honor and moral character who could always be counted on to do the right thing. Toby has always been my mentor, someone I admire for his goodwill I am grateful that you have taken a moment to read my letter and appreciate your consideration.

In closing your Honor, all I can ask is that you respectively consider Toby's children, mother and friends in making your decision.

es4tfully

Vincent Martin
**WFG National Title**
9665 Granite Ridge Drive
San Diego CA 92123
858-335-3159



# Elizabeth Rabbitt

June 2, 2019

To the Honorable Nathaniel M. Gorton
℅ Arguedas, Cassman & Headley, LLP
Berkley, California 94710

Dear Judge Gorton,

My name is Elizabeth Rabbitt a retired health care CEO and close friend of
Toby Macfarlane.  Toby, a close friend for the past five-plus years has informed
me of his pleading guilty to his involvement in the college admissions scheme.
It is my wish to convey to you the kind of human Toby is from the inside out.

For starters, it is impossible to describe the depth of personal anguish and
regret that he has been living with since the day this story first broke the news.
In spite of the hurricane, this has brought into his personal life turning every
aspect of it upside down and ugly, he has remained positive and has never
complained or behaved like a victim.  He knows what he did was wrong and is
now and forever will regret the mistake he made doing what he thought would
be good for his kids and their future.  His career, social network, and even close
family relationships have taken a heavy blow, but while he wishes he could turn
back time and change his course of actions, he knows that his future will be a
matter of reconstruction and continuing to live his life every day in a way that
leaves the world a better place.

During our friendship, he has left behind many markers of generosity and
concern for those in need.  Among examples of how much he cares for others
is the time he helped pay the veterinarian bill for my friend's horse that had a
bad accident on our ranch, has personally gone to Walmart to buy backpacks
and a giant suitcase for me to take on a mission trip to Kenya to the Kajiado
Girls Rescue Center,  and has made generous donations to my fundraising

initiatives for the Catalina Island Conservancy and Maranatha Volunteers International.

It is clear to me that Toby has been and forever will be changed by the mistake he made, including the price he is paying as he works hard to rebuild his life, repair his reputation and relationships which have been fractured and in some cases destroyed.   I know Toby will not just wither away but will be a poster child for speaking up to remind those around him of the importance of social responsibility to not follow in his footsteps, and how wrong it is for anyone of any status to take short cuts as he did.

Please, in determining Toby's sentence take into consideration the value of Toby here in our world, making a difference every day vs. loss, or may I say time wasting away in a prison, where we all lose.  The price he has paid to date has been tremendous both financially and emotionally.   If he is allowed to, he plans to be with our group next Spring on a trip to Zambia to help build classrooms with Maranatha Volunteers International, and I so hope that he will be able to join us there.

To know Toby is to appreciate what a fine person he is and I wish you could. This drastic diversion from the course of his life actions was such a shock to me and completely out of character with the Toby I know, and I know for certain that his every waking moment is now is filled with remorse and a drive to make it up to society in every way he can find possible.   Thank you for taking the time to listen to my words and baking these thoughts into your decision-making process.

Sincerely yours,

Elizabeth Rabbitt

To the Honorable Nathan M. Gorton
% Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkeley, California 94710

June 2, 2019

Dear Judge Gorton,

I am proud to have Toby Macfarlane as a friend. It has been my experience that Toby has been a good father and a reliable person, always available if anyone needs his help.

Toby is a good man who used bad judgement and made a mistake. He is the first to admit this and has shown contrition and regret for what he has done.

Toby has suffered greatly these past months. He was handcuffed and taken to jail where he had to spend the night. His house has been surrounded by reporters. He has been disparaged in the newspapers, radio and television. It has been painful for us to see this happen to Toby and his family.

In light of this, we pray that your Honor will show leniency in his sentencing.


Thank you.

Respectfully,

Michael E. Rabbitt D.D.S.

May 31ˢᵗ, 2019


To the Honorable Nathaniel M. Gorton

c/o Arguedas, Cassman & Headley, LLP

803 Hearst Avenue

Berkeley, California 94710


Dear Judge Gorton:

I am compelled to write to you today on behalf of my friend and sometimes business partner for 20+ years, Toby Macfarlane.  Like so many others across our nation, I have been following the events of these past few months with a sense of both confusion and sadness.

Having 3 daughters aged 8 to almost 13, the stories of what all of these parents have allegedly felt compelled to do in an effort to help their children get into top notch universities has left me both confused and really quite sad. I have tried to reconcile how someone that I know to be such a caring and thoughtful parent would choose this path as the one he felt to be the right choice for his children.

Unfortunately, I have not come to understand how so many parents made this very bad choice. In searching for answers, so that I could best discuss the how and why with my own children to create a learning moment, I have found that the question kept evolving into a conversation about how someone who I think of as being such a wonderful parent, friend, and community leader could make this poor choice.  Throughout these conversations with my own girls, I did notice that the conversation kept coming back to all of the positive experiences I have seen involving Toby over the past 20 years and it resonated even further when I asked another good friend for advice on how he would handle this if a friend did something he didn't approve of. I still hear his answer today as clear as I did the day the story broke across the country.

"Sometimes, really good people make just make a bad choice, and that doesn't mean they are a bad person".

I would ask to take a few minutes of your time to share a little about the Toby that I have known for 20+ years.  A little about a very good person that evidently has made a bad choice.

I met Toby in my early 20's straight out of University when I began a career in real estate brokerage. Even though I was totally green, Toby always took time to lend a hand, provide advice, or introduce me to veteran members of the Real Estate community.  Toby was always very patient and remarkably kind. What one would describe as a Mensch in my world. As my career advanced and I delved into investment across the country, Toby was always willing to offer advice and counsel with no expectation of

something in return. Toby is the guy who is always willing to help a friend. If I needed counsel, advice, or direction, Toby was always willing to take time to give an honest, thoughtful word of support with no expectation or request for anything in return.

Our relationship evolved further in the mid 2000's to the point that we became full fledge partners buying restaurant building across the country. We would hop a plane from San Diego to Louisville, would then drive to Evansville, next Henderson, down to Nashville and then off to Savannah to look at an Arby's or Burger King restaurant building, often all in 48 hours or less.

Spending that kind of time with someone one on one, one is able to see what the really lies below the façade of the person they are with. I can share unequivocally that I found Toby to be one of the most genuine, honest, dedicated people I have ever met. Simply a good person. There was never a hint of dishonesty, or BS of any kind. Toby is literally to me one of the most honest and direct people I have ever met. I didn't always like the response I would get from Toby, but it was always sincere, unfiltered, and came from the heart. Truly a refreshing and very uncommon experience in the world of investment real estate that I see far too infrequently.

I would like to believe that I have been exposed to quite a unique set of people over the years, from working for Senator Lieberman in the US Senate, to acting as the Treasurer and Trustee at one of the largest private day schools in San Diego, as a founder of the Scripps MD Anderson Cancer center, to my recent appointment as a Trustee of Scripps Health, San Diego's #1 and premier health system. The point being, I have met thousands of people from all walks of life, from top to bottom, left to right, and I still to this day even in light of the events that have transpired, think of Toby as one of the finest people I have met. I had dozens of people ask me what I thought about this situation, and I found myself answering instinctively that if I was stranded on the high desert road that connects Palm Springs to San Diego with a broken down car in the middle of the night, I would call Toby to come help me and he would be there without hesitation and without judgment to lend a hand. That is the Toby that I know.

Just days before the news of this case broke, I was considering recommending Toby to my Scripps Health Board as a possible candidate to become a fellow Trustee.

I have a tremendous amount of respect for our courts and rule of law. I write this letter for that reason. I hope this letter in some way will help to show the court a little more about the Toby who I know to be an incredibly fine father, friend, and human being. The world is a better place because Toby Macfarlane is in it.

Thank you, your honor, for taking them time to read this letter. I truly hope it sheds some light on the remarkable side of Toby Macfarlane that I have known and continue to know to this day.

With gratitude and respect,

Elliot A. Scott

June 21, 2019

To the Honorable Nathaniel M. Gorton
c/o Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkeley, California 94710

Dear Judge Gorton:

My name is John Trotter and I am the Founder and Principal of an advertising and design agency in the Bay Area. One of my lifelong friends is Toby Macfarlane. I am aware that Toby is part of the college admissions scheme and aware that he has pleaded guilty. I have known Toby since we were sophomores in college. He went to USC, I went to Occidental College across town. During college, I frequently went over to USC to visit friends, watch USC sports and expand my social circle. It was during these years that Toby and I struck up a friendship based on our common sports interests and our common friends.

I am writing this letter to shed some light on the Toby that I have known, who he is as a person and how he has been incredibly gracious, thoughtful and generous to me and my family. I do remember in those early years in college and just after, that Toby was always a very inquisitive friend, one who was interested in what I was doing professionally, socially and what particular sports I was participating in or following.  A lot of guys talk about themselves, Toby always was curious about what was going on in others' lives while his interests and life story took a back seat. Toby and I met our eventual wives around the same time and got married within a year or two of each other. Typical of that stage of life, both Toby and I focused on our marriages, began families, and built a business or worked on advancing a career in Toby's case. During those years, Toby and I saw each other at milestone events with mutual friends but generally stayed loosely in touch as family and career obligations took a priority.

About 5 years ago, Toby and I resurrected our friendship. It was during that time that both Toby and I were going through the break-up of our marriages and the soul searching that went along with that. My divorce preceded Toby's by about a year and similar to when we were younger, Toby took an interest not only in the transactional aspects of the impending divorce, but was also sincerely interested in the psychological side of a divorce and how that affected me. Instead of being about him, he was very interested in how I was dealing with the emotional and psychological side of the divorce. Toby is unique as a friend as his level of interest and vulnerability that he showed is rare and sometimes difficult for most guys our age. That weekend, we developed a common bond and implicitly agreed to help each other get through this difficult phase of our lives. With that as our foundation of the renewed friendship, over the last 4 years, Toby and I have spent a great deal of time together.

Over these last 4 years of our resurrected friendship, I have witnessed and grown very close to a man of good character, an incredibly loyal friend who will go out of his way to help a buddy out, a dad who loves his children unconditionally, and a man whose kindness and generosity is increasingly rare. Let me share a couple of examples. Navigating your 50's is not an easy thing to do. Both Toby and I are good examples of that. What I have found very interesting is Toby has become the go-to friend that a number of our peers have turned to for lack of a better term; peer therapy. I know Toby hasn't labeled himself that, nor has he sought it out, rather our friends,

mostly men in their 50's have sought him out to help work through these difficult life stages and issues. Toby, on a number of occasions has opened his home to friends seeking guidance, a sympathetic ear, or just someone who asks those appropriately inquisitive questions. Toby has helped a lot of us process our difficult stages and has become our wise and emotionally stable counsel. In a lot of ways, he is the glue that is holding our extended friend group together.

The other example is one of the kind and generous Toby. I have a 27 year old nephew who has a rare form of terminal cancer. My sister and brother-in-law are going through an incredibly trying time in doing whatever they can to make the time they have left with him as meaningful as possible. For my extended family, the one thing that is precious is time with our nephew. Toby happened to be out of town during a weekend where my nephew was in between chemo treatments. I mentioned that I was coming to San Diego to visit with my nephew and sister and he offered his home for the weekend for all of us to have a spur of the moment family reunion. Toby doesn't know my sister or my nephew but offered his home as a refuge to get away from their new normal of cancer treatments. We ended up having a wonderful extended family weekend in his home, 25 of us enjoying a wonderful meal, laughter and for a moment, we forgot about our nephew's illness. It was what we needed and will be a lasting memory for my family during a very trying time. It was Toby's selflessness and generosity that allowed us to have this special time with our nephew.

At his core, Toby is a good man. He is always there for his friends, is always considerate of others, has a deep and abiding love for his kids, and is exceptionally generous. This case has had a significant effect on Toby. I have witnessed him becoming more reserved as he is not sharing what's on his mind as he has in the past. I worry that this case is going to affect his openness and willingness to be an influential and significant part of his friends and colleagues lives. I think this is how he is expressing remorse for what he did, by not being as open as he was and it's sad to see. This is not to mention the hardship he has suffered in both public humiliation and the significant professional consequences.

Judge Gorton, I would simply ask that you consider the above when determining whether to impose further punishment on this very special man.

Thank you very much for your thoughtful consideration.


Yours truly,

John Trotter

To the honorable Nathaniel M. Gorton c/o Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkeley, California 94710

Dear Judge Gorton:

My name is Rande Turner. I met Toby Macfarlane nearly 34 years ago when he came to work at Westland Title Company where I was employed. Toby and I became very close friends during those first three years we worked together and soon grew to be best friends over our long and wonderful relationship.

When I took a sabbatical in 1989 Toby stepped in and managed my business accounts with utter professionalism. Over the past 34 years Toby and I have invested passively and actively together in real estate investments. I also served with Toby on the board of Sunrise Bank of San Diego from 2000-2005.

Without a doubt Toby has always been detailed, thorough, extremely fair and honest in any of our business dealings together. There are countless times in business I've seen Toby do the right thing when it may have not been in his best interest, but ended up in the best interest of all parties.

I was with Toby the night he met his future wife ▇▇▇▇ Along with my wife we spent many holidays, vacations and special moments together, many of which included our parents, siblings and children. Toby's two children ▇ and ▇ have been intertwined in my life throughout their entire life's.

Toby was an extremely loyal and devoted husband during his marriage to ▇▇▇▇ Toby has been a plugged-in Dad who has coached his kids sports, traveled extensively with his kids and supported their endeavors. I am aware Toby has pleaded guilty to the college admissions scheme and have witnessed the brutal fallout both physically and emotionally to he and his family.

The purpose of my letter is to share some of the amazing qualities that make Toby who he is today and some personal experiences I've had with Toby over these 34 years.

About a year after Toby and I met his 12-year-old sister ▇▇▇ was diagnosed with terminal leukemia. What I witnessed was simply amazing. Toby sprung into action to help support his sister and his parents through such a difficult time. One day I said let's go grab a beer after work to which Toby said "I'm not going to touch a drop of alcohol not even a soda" "I want to remain completely present and feel all of the emotions I'm going through with my sister over the coming months" Once his sister passed he formed a tennis tournament in her honor and raised money for cancer research and awareness.

Toby continued to love on his parents, dad ███ and his mother ███ and be there for them after the loss of ███. Toby had an extremely strong relationship with each of his parents.

The night Toby's father died Toby was on my doorstep immediately in tears and disbelief that his dad passed at such an early age. Toby stepped in and took care of all that was necessary to support his mother and brother. We traveled together back to Utah where Toby assisted the family with all of the arrangements and details for the estate and honored his dad beautifully at the memorial service.

Toby and his wife ███ have been very charitable and philanthropic by serving many organizations in the San Diego area with their time and resources.

Toby introduced me and my family to Montecito Sequoia family camp up in the Sequoia national Forest. This was a camp where families come together for a week with no cell phones no technology just a chance to connect with one another. Some of those weeks where the best memories ever as our families would spend the week together hiking, biking dressing up for the talent show and sitting by a sing-along campfires.

Toby has served his family, community, friends and clients for so many years always putting them first. Toby has now lost all that he built over the last 34 years and has been stripped of his license to practice a job he so loved. Toby is a broken man that has been severely impacted personally, financially and emotionally. Toby has expressed great remorse to me for his actions and asked for my forgiveness.

Your Honor, I hope you will consider Toby's past actions and history as the father, husband community leader and best friend. Toby has suffered gargantuan losses as a result of his actions. I plead with you to allow Toby to remain connected to his family so they may heal together. I gratefully appreciate your consideration.

Kind regards,
Rande Turner

6/12/19

June 20, 2019

Honorable Nathaniel M. Gorton
Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkeley, California 94710

Dear Judge Gorton:

My name is Art Wadlund. I am in the Apartment Business, both as a principal and as a broker.  I met Toby Macfarlane through a mutual friend who is also in the Apartment Business. I have known Toby for about 5 years. This is a relatively short time frame; however, I have spent a considerable amount of time with Toby during this period. I am also aware that Toby has pleaded guilty to the College Admissions Scheme.

I know Toby and his character traits well.  One example of his character is his kindness to others and willingness to help, even with potential risk to himself.  When I had known Toby for only a few months, I had a business crisis where I needed money almost immediately.  Toby stepped up and lent me what I needed on a handshake.  Most/all others either would have required tangible security, however, Toby was compassionate and a great friend. I will never forget his generosity.

My primary purpose in writing this letter is to provide a unique insight into Toby's character and his unique situation with his son, ███    These insights are very personal to both Toby and me, but under the circumstances, I feel compelled to share them.



1

I know that Toby has remorse for his actions and figuratively kicks himself daily for taking the actions that he did in this scandal.  His previous sterling reputation among friends and in the business community has been irrevocably damaged by his actions. He blames only himself for these actions.  The thought of being separated from █ at a time when █ especially needs Toby's calming influence, and often just someone to talk to are especially difficult for Toby.

In closing, I thank you for your consideration of Toby's unique situation with his son and the impact on █ life.

Yours truly,

Art Wadlund

2

EXHIBIT D



**THE CAMPAIGN** *for the* **University of Southern California**

FAS REGNA TROJAE

| GIFT RECEIPT |

Thank you for your contribution. Your support is very much appreciated.

**04/14/2014**

USC Marshall Dean's Strategic Fund      $200.00
**Total Gift Amount**      $200.00

**UNIVERSITY ADVANCEMENT**

Toby Mac Farlane

No goods or services have been transferred to you in exchange for this gift. Please retain this receipt with your records in order to substantiate any tax deduction you may claim. If you have any questions regarding your gift, please contact University Advancement at 213-821-6094 or giftcc@usc.edu.

---



**THE CAMPAIGN** *for the* **University of Southern California**

FAS REGNA TROJAE

| GIFT RECEIPT |

Thank you for your contribution. Your support is very much appreciated.

**06/30/2014**

USC Athletics Scholarship Club      $15,000.00
**Total Gift Amount**      $15,000.00

**UNIVERSITY ADVANCEMENT**

Toby MacFarlane

No goods or services have been transferred to you in exchange for this gift. Please retain this receipt with your records in order to substantiate any tax deduction you may claim. If you have any questions regarding your gift, please contact University Advancement at 213-821-6094 or giftcc@usc.edu.

---



**THE CAMPAIGN** *for the* **University of Southern California**

FAS REGNA TROJAE

| GIFT RECEIPT |

Thank you for your contribution. Your support is very much appreciated.

**10/28/2014**

USC Athletics Scholarship Club      $15,000.00
**Total Gift Amount**      $15,000.00

**UNIVERSITY ADVANCEMENT**

Toby MacFarlane


MacFarlane

No goods or services have been transferred to you in exchange for this gift. Please retain this receipt with your records in order to substantiate any tax deduction you may claim. If you have any questions regarding your gift, please

 **USC** University of Southern California

**UNIVERSITY ADVANCEMENT**

THE
CAMPAIGN
*for the*
University
of Southern
California

FAS REGNA TROJÆ

| GIFT RECEIPT |

Thank you for your contribution. Your support is very much appreciated.

**11/23/2014**

| | |
|---|---|
| USC Tennis Fund | $250.00 |
| **Total Gift Amount** | $250.00 |

Toby MacFarlane
████ MacFarlane
████████████████████████

No goods or services have been transferred to you in exchange for this gift. Please retain this receipt with your records in order to substantiate any tax deduction you may claim. If you have any questions regarding your gift, please contact University Advancement at 213-821-6094 or giftco@usc.edu.



**USC** University of Southern California

**UNIVERSITY ADVANCEMENT**

THE
CAMPAIGN
*for the*
University
of Southern
California

FAS REGNA TROJAE

| GIFT RECEIPT |

Thank you for your contribution. Your support is very much appreciated.

**01/20/2015**

USC Athletics Recruiting
Celebration                              $100.00
**Total Gift Amount**            $100.00

Toby MacFarlane
████████ MacFarlane



No goods or services have been transferred to you in exchange for this gift. Please retain this receipt with your records in order to substantiate any tax deduction you may claim. If you have any questions regarding your gift, please contact University Advancement at 213-821-6094 or uscgift@usc.edu.

---

**USC** University of Southern California

**UNIVERSITY ADVANCEMENT**

THE
CAMPAIGN
*for the*
University
of Southern
California

FAS REGNA TROJAE

| GIFT RECEIPT |

Thank you for your contribution. Your support is very much appreciated.

**06/01/2015**

USC Basketball Fund                  $9,000.00
**Total Gift Amount**            $9,000.00

Toby MacFarlane
████████ MacFarlane



No goods or services have been transferred to you in exchange for this gift. Please retain this receipt with your records in order to substantiate any tax deduction you may claim. If you have any questions regarding your gift, please contact University Advancement at 213-821-6094 or giftcc@usc.edu.

---

**USC** University of Southern California

**UNIVERSITY ADVANCEMENT**

THE
CAMPAIGN
*for the*
University
of Southern
California

FAS REGNA TROJAE

| GIFT RECEIPT |

Thank you for your contribution. Your support is very much appreciated.

**06/22/2015**

USC Athletics Scholarship Club       $15,000.00
**Total Gift Amount**            $15,000.00

Toby MacFarlane
████████ MacFarlane



No goods or services have been transferred to you in exchange for this gift. Please retain this receipt with your records in order to substantiate any tax



**USC** University of
Southern California

UNIVERSITY ADVANCEMENT

THE
CAMPAIGN
*for the*
University
of Southern
California

FAS REGNA TROJAE

| GIFT RECEIPT |

Thank you for your contribution. Your support is
very much appreciated.

**12/07/2015**

| | |
|---|---|
| USC Athletics Scholarship Club | $15,000.00 |
| **Total Gift Amount** | **$15,000.00** |

Toby MacFarlane

MacFarlane

No goods or services have been transferred to you in exchange for this gift.
Please retain this receipt with your records in order to substantiate any tax
deduction you may claim. If you have any questions regarding your gift, please
contact University Advancement at 213-821-6094 or uscgift@usc.edu.

 **USC** University of
Southern California

**UNIVERSITY ADVANCEMENT**

THE
CAMPAIGN
*for the*
University
of Southern
California

FAS REGNA TROJAE

| GIFT RECEIPT |

Thank you for your contribution. Your support is
very much appreciated.

**06/20/2016**

| | |
|---|---|
| USC Athletics Scholarship Club | $15,000.00 |
| **Total Gift Amount** | $15,000.00 |

Toby MacFarlane
█████ MacFarlane
███████████████████████████

No goods or services have been transferred to you in exchange for this gift.
Please retain this receipt with your records in order to substantiate any tax
deduction you may claim. If you have any questions regarding your gift, please
contact University Advancement at 213-821-6094 or giftcc@usc.edu.



**USC**

UNIVERSITY ADVANCEMENT

THE CAMPAIGN *for the*
University of Southern California

FAS REGNA TROJAE

| GIFT RECEIPT |

Thank you for your contribution. Your support is very much appreciated.

02/23/2017

| | |
|---|---|
| USC Women's Athletic Board Fund | $50,000.00 |
| **Total Gift Amount** | **$50,000.00** |



Toby  MacFarlane
MacFarlane

No goods or services have been transferred to you for the deductible gift amount listed above. Please retain this receipt with your records in order to substantiate any tax deduction you may claim. If you have any questions regarding your gift, please contact University Advancement at 213-821-6094 or giftcc@usc.edu.

---

**USC** University of
Southern California

UNIVERSITY ADVANCEMENT

THE CAMPAIGN
*for the*
University
of Southern
California

FAS REGNA TROJAE

| GIFT RECEIPT |

Thank you for your contribution. Your support is very much appreciated.

04/20/2017



Toby MacFarlane
MacFarlane

| | |
|---|---|
| USC Athletics Scholarship Club | $15,000.00 |
| **Total Gift Amount** | **$15,000.00** |

No goods or services have been transferred to you in exchange for this gift. Please retain this receipt with your records in order to substantiate any tax deduction you may claim. If you have any questions regarding your gift, please contact University Advancement at 213-821-6094 or giftcc@usc.edu.

EXHIBIT E

View Transaction Printable View

Font Size

Close Window  Print Screen

## View Transaction Printable View

### Transaction Information

| | |
|---|---|
| Account: | Checking - xxxxxx ███ |
| Description: | CHECK |
| Amount: | -$33,727.40 |
| Status: | Cleared |
| Customer Reference Number: | 2474 |
| Transaction: | Check 2474 |
| Date Cleared: | September 23, 2010 |
| Date Initiated: | September 23, 2010 |

Note: Check and Deposit Images older than 180 days are not available online, but can be obtained by ordering copies by visiting the Services tab. In order to maintain service, there is scheduled maintenance every Saturday at 11:00 PM and on the last day of each month at 7:00 PM. During this time, which typically lasts about six hours, your images may not be available. We apologize for any inconvenience this may cause.



Enlarge
Save

Enlarge
Save

View Transaction Printable View

Font Size

Close Window   Print Screen

## View Transaction Printable View
### Transaction Information

| | |
|---|---|
| Account: | Checking - xxxxx ▮ |
| Description: | CHECK |
| Amount: | $-48,884.89 |
| Status: | Cleared |
| Customer Reference Number: | 2463 |
| Transaction: | Check 2463 |
| Date Cleared: | September 19, 2019 |
| Date Initiated: | September 19, 2019 |

Note: Check and Deposit Images older than 180 days are not available online, but can be obtained by ordering copies by visiting the Services tab. In order to maintain service, there is scheduled maintenance every Saturday at 11:00 PM and on the last day of each month at 7:00 PM. During this time, which typically lasts about six hours, your images may not be available. We apologize for any inconvenience this may cause.



Enlarge
Save

Enlarge
Save

# EXHIBIT F

1
2
3
4

# STATE OF CALIFORNIA
# DEPARTMENT OF INSURANCE
# SAN FRANCISCO

5
6
7
8   In the Matter of the License and Licensing
    Rights of:

File No. SD201900120

ORDER IMMEDIATELY SUSPENDING
AND REMOVING FROM OFFICE AND
EMPLOYMENT WITH PRODUCTION
AGENCY, and
NOTICE OF RIGHT TO HEARING

9   TOBY TAYLOR MACFARLANE,

10                              Respondent

11
12
13

14   TO:  TOBY TAYLOR MACFARLANE

15

16        YOU ARE HEREBY IMMEDIATELY SUSPENDED AND PROHIBITED from

17   participating in any manner in the business of an insurer or insurance production agency,

18   including engaging in any employment, management or control of any production agency, or

19   from acting as an individual insurance producer, absent prior written consent of the Insurance

20   Commissioner.

21        YOU ARE HEREBY NOTIFIED that the conduct, conditions and grounds which the

22   Insurance Commissioner deems violative of the provisions of California Insurance Code section

23   1748.5(e), on which this action is based, are as follows:

24        (a)     From January 1, 2009 until the present, Respondent has been licensed to act as a

25   Title Marketing Representative pursuant to license number 0G44385; and

26        (b)     On or about April 23, 2019 in Case Number 19CR10131 in the United States

27   District Court for the District of Massachusetts, an Information was filed charging Respondent

28   with criminal activity as follows:

#1119847.1                                    -1-

1      • Conspiracy to Commit Mail Fraud and Honest Services Mail Fraud, in violation of

2          Title 18 – Unites States Code Section 1349;

3      (c)  By reason of the foregoing, the Commissioner finds that Respondent is a subject

4  person charged in a complaint or indictment with a crime punishable by imprisonment for a term

5  exceeding one year and which involves as one of its necessary elements a fraudulent act or an act

6  of dishonesty in the acceptance, custody, or payment of money or property, and that a failure to

7  immediately issue the order threatens the financial solvency of an insurer or may cause financial

8  or other injury to any person, pursuant to Section 1748.5, subdivision(e)(1), of the California

9  Insurance Code.

10

11                          **NOTICE OF RIGHT TO HEARING**

12      YOU ARE HEREBY NOTIFIED that within thirty (30) days after the issuance of this

13  Order, you may file with the Insurance Commissioner an application for a hearing on the Order,

14  addressed to Teresa R. Campbell, Assistant Chief Counsel, California Department of Insurance,

15  Legal Division, San Francisco Enforcement Bureau, 45 Fremont Street, 21st Floor, San Francisco,

16  California 94105.

17      YOU ARE FURTHER NOTIFIED that upon written request to the Insurance

18  Commissioner at the above address, you may request an extension of the thirty (30) day period by

19  an additional thirty (30) days provided that the request is filed with the Insurance Commissioner

20  within thirty (30) days after the Order is issued.

21      YOU ARE FURTHER NOTIFIED that a hearing will be scheduled within fifteen (15)

22  business days after the application for a hearing is filed or within a longer period of time if you

23  request it.

24      YOU ARE FURTHER NOTIFIED that a violation of this Order may result in civil

25  penalties of up to one thousand dollars ($1,000) per day for each day for which the violation

26  continues.

27  ///

28  ///

1   This Order is effective immediately.

2

3   Executed this 2nd day of May, 2019.

4

5

6           RICARDO LARA
            Insurance Commissioner
7
            By
8

9

10          Teresa R. Campbell
            Assistant Chief Counsel
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT G

1

**STATE OF CALIFORNIA**

2

**DEPARTMENT OF INSURANCE**

3

**SAN FRANCISCO**

4

5

6

7

In the Matter of the License and Licensing
Rights of:

8

TOBY TAYLOR MACFARLANE,

9

Respondent

10

File No. SD201900120

ORDER OF SUMMARY REVOCATION

11

12

13

WHEREAS, from November 7, 2002 until February 5, 2018, when he was suspended by

14

the Department pursuant to Insurance Code section 1748.5, Respondent TOBY TAYLOR

15

MACFARLANE ("Respondent") has been licensed to act as an Accident and Health Agent and

16

Life-Only Agent pursuant to license number 0D10596; and

17

WHEREAS, from January 1, 2009 until May 2, 2019, when he was suspended by the

18

Department pursuant to Insurance Code section 1748.5, Respondent has been licensed to act as an

.19

Respondent has been licensed to act as a Title Marketing Representative pursuant to license

20

number 0G44385; and

21

WHEREAS, it is provided by California Insurance Code sections 1669(a) and 1738 that

22

the Insurance Commissioner may, without hearing, revoke any permanent license and licensing

23

right if the licensee has committed a felony as shown by a verdict of guilty, a plea of guilty or

24

nolo contendere, or by a final judgment of conviction thereof; and,

25

WHEREAS, on or about June 21, 2019, in in Case Number 19CR10131 in the United

26

States District Court for the District of Massachusetts, Respondent pled guilty to the following:

27

- Conspiracy to Commit Mail Fraud and Honest Services Mail Fraud, in violation of

28

1    Title 18 – Unites States Code Section 1349;

2

3    NOW, THEREFORE, pursuant to the authority of California Insurance Code Sections

4 1669(a), in conjunction with Sections 1738, the Insurance Commissioner hereby orders that the

5 all licenses and licensing rights of Respondent be, and the same hereby are, REVOKED, effective

6 30 days from the date of this order.

7    IN WITNESS WHEREOF, I have hereunto set my hand this 2nd day of July,

8 2019.

9

10        RICARDO LARA
           Insurance Commissioner

11

12        By

13

14           Teresa R. Campbell
           Assistant Chief Counsel

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT H



CALIFORNIA BANK TRUST

March 13, 2019

Toby MacFarlane

████████████████

Re:     Credit Facility ending in ████████

*Adverse Action Notice*

Dear Mr. MacFarlane:

This is intended as notice that we have frozen the subject credit facility and will not consider a renewal of the facility or any other accommodations at maturity of the line on April 1, 2019. There currently is nothing outstanding on the credit line.

We are taking these actions due to your reported arrest on felony charges for your alleged participation in what news sources are reporting as a college admissions bribery scandal. Both news sources and an affidavit in support of the charging documents refer to you as a "former" title company executive and we assume, therefore, that your financial situation has or very likely will change from what it was when we approved the subject credit facility. We also assume that legal fees for defense of the charges will be substantial. These factors make it unlikely that you would meet underwriting standards for any further extension of credit.

For these reasons, we have taken the actions noted above.

Sincerely,

Jacob Richards
Senior Vice-President
California Bank & Trust
PH: 858-623-3166
E-mail: Jacob.Richards@calbt.com

*The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Office of Controller of the Currency, Western District Office, 1225 17th Street, Suite 300, Denver, CO 80202.*

# EXHIBIT I

| Defendant Name | Scheme | Govt's Asserted Aggravating Factors | Government Sentencing Rec. | Sentence Imposed |
|---|---|---|---|---|
| John Vandemoer<br><br>No. 19-Cr-10079 RWZ | Recruitment scheme (Stanford Soccer Coach) | 1) Accepted $610,000 to get 3 students accepted as recruited athletes (Govt.'s Sent. Memo, p. 9) | 13 months<br>$10,000 fine | 1 day, CTS<br>$10,000 fine |
| Peter Jan Sartorio<br><br>No. CR 19-10117 IT | ACT scheme (Parent) | 1) Paid $15,000 to Singer.<br>2) Initiated idea to pay cash to conceal payment (Govt.'s Sent. Memo, p. 3)<br>3) Structured withdrawals to avoid CTR (*Id.*) | 1 month<br>$9,500 fine | Probation/no prison<br>$9,500 |
| Felicity Huffman<br><br>No. CR 19-10117 IT | ACT scheme (Parent) | 1) Paid $15,000 to Singer<br>2) Active participant (Govt.'s Sent. Memo, p. 5)<br>3) Lied to high school counselor (*Id.*)<br>4) Took steps to repeat for younger daughter (*Id.* at 4)<br>5) Hypocritically held herself as a famous personality, purveying parenting wisdom (*Id.* at 7) | 1 month<br>$9,500 fine | 14 days<br>$20,000 fine |

1

| Defendant Name | Scheme | Govt's Asserted Aggravating Factors | Government Sentencing Rec. | Sentence Imposed |
|---|---|---|---|---|
| Marjorie Klapper<br><br>No. CR 19-10117 IT | ACT scheme (Parent) | 1) Paid $15,000 to Singer<br>2) Affirmatively sought out Singer for scheme (Govt.'s Supp. Sent. Memo, p. 4)<br>3) Active participant – "Extensive involvement in multiple aspects of fraud" (*Id.* at 4)<br>4) Falsified college applications Regarding son's ethnicity (*Id.* at 4)<br>5) Falsified college applications regarding parents' education levels (*Id.*)<br>6) Previously lied to ETS about amount of tutoring older son received (*Id.* at 2) | 4 months<br>$20,000 fine | 3 weeks<br>$9,500 fine |
| Jane Buckingham<br><br>No. CR 19-10117 IT | ACT scheme (Parent) | 1) Paid $50,000 to Singer<br>2) Active participant<br>3) Complete insight into scheme, including Singer's bribe payments to proctor<br>4) Arranged for Singer's assoc. to take test<br>5) Lied to high school officials about re-location<br>6) Lied to ACT about re-location<br>7) Intended to repeat for daughter (arrested) | 6 months<br>$40,000 fine | 3 weeks<br>$40,000 fine |

2

| Defendant Name | Scheme | Gov't's Asserted Aggravating Factors | Government Sentencing Rec. | Sentence Imposed |
|---|---|---|---|---|
| Gregory Abbott<br><br>No. CR 19-10117 IT | ACT scheme<br>(Parent) | 1) Paid $125,000 to Singer<br>2) Repeat offender–falsified 3 tests results (Govt.'s Supp. Sent. Memo, p. 6)<br>3) Active participant – arranged for testing location<br>4) Sought out Singer for scheme (*Id.*)<br>5) Complete insight into scheme<br>6) Threatened legal action *vs.* College Board when test score was delayed (*Id.*) | 8 months<br>$40,000 fine | 1 month<br>$45,000 fine |
| Marcia Abbott<br><br>No. CR 19-10117 IT | ACT scheme<br>(Parent) | 1) Paid $125,000 to Singer<br>2) Repeat offender–falsified 3 tests results (Govt.'s Supp. Sent. Memo, p. 6)<br>3) Active participant – arranged for testing location<br>4) Sought out Singer for scheme (*Id.*)<br>5) Complete insight into scheme<br>6) Threatened legal action *vs.* College Board when test score delayed (*Id.*) | 8 months<br>$40,000 fine | 1 month<br>$45,000 fine |

3

| Defendant Name | Scheme | Govt's Asserted Aggravating Factors | Government Sentencing Rec. | Sentence Imposed |
|---|---|---|---|---|
| Gordon Caplan<br><br>No. CR 19-10117 IT | ACT scheme (Parent) | 1) Paid $75,000 to Singer<br>2) High profile attorney (Govt.'s Supp. Sent. Memo, p. 1)<br>3) Sought out Singer for fraud (*Id.* at 2 and 6)<br>4) No previous counseling by Singer (*Id.* at 2)<br>5) Active participant – flew across country twice for testing location (*Id.* at 1)<br>6) Hired attorney to force ACT to release fraudulent test score (*Id.* at 10) | 8 months<br>$40,000 fine | 1 month<br>$50,000 fine |
| Robert Flaxman<br><br>No. CR 19-10117 IT | ACT scheme (Parent) | 1) Paid $75,000 to Singer<br>2) Sought out Singer for scheme (Govt.'s Supp. Sent. Memo, p. 3)<br>3) Involved daughter in the scheme<br>4) Took a tax deduction (Id. at 4)<br>5) Later, agreed to lied to the IRS for Singer's audit (*Id.*) | 8 months<br>$40,000 fine | 1 month<br>$50,000 fine |
| Jeffrey Bizzack<br><br>No. 19-CR-10222 DPW | Recruitment scheme (Parent) | 1) Paid total of $250,000 to Singer and U.S.C. Athletics<br>2) No previous counseling by Singer (Govt.'s Supp. Sent. Memo, p. 2)<br>3) He discussed taking tax deductions for payments but was arrested before filing a return (*Id.* at 4 - 5.) | 9 months<br>$75,000 fine | 2 months<br>$250,000 fine |

| Defendant Name | Scheme | Govt's Asserted Aggravating Factors | Government Sentencing Rec. | Sentence Imposed |
|---|---|---|---|---|
| Devin Sloane<br><br>No. CR 19-10117 IT | Recruitment scheme (Parent) | 1) Paid total of $250,000 to Singer and U.S.C. Athletics<br>2) Involved son in the scheme (Govt.'s Supp. Sent. Memo, p. 3)<br>3) Active participant–"in elaborate ways" (*Id.*)<br>   a. Lied to high school officials about relocation of test<br>   b. Lied to U.S.C. admissions about donation<br>   c. Photoshopped photographs of son<br>4) Later, he agreed to mislead the IRS for Singer's audit (*Id.*)<br>5) After pleading guilty, he did not "fully accept responsibility for his crime" (*Id.* at 2)<br>   a. "He continues to show a striking lack of remorse and disdain for the law" (*Id.*) | Year and a day<br>$75,000 fine | 4 months<br>$95,000 fine |

5

| Defendant Name | Scheme | Govt's Asserted Aggravating Factors | Government Sentencing Rec. | Sentence Imposed |
|---|---|---|---|---|
| Stephen Semprevivo<br><br>No. CR 19-10117 IT | Recruitment scheme (Parent) | 1) Paid a total of $400,000 to Singer<br>2) Active participant (Govt.'s Supp. Sent. Memo, p. 1)<br>3) Involved son in the scheme (Id. at 1)<br>   a. Enlisted him repeatedly to send false emails, essays and applications to Georgetown (*Id.* at 3 - 4)<br>4) Had complete insight into scheme, including bribe paid to Georgetown tennis coach (*Id.* at 6)<br>5) After pleading guilty, he showed "a complete lack of remorse" (*Id.* at 2)<br>6) He filed a lawsuit against Georgetown to bar school from expelling son (*Id.* at 1 – 2)<br>7) He persisted to try "to evade responsibility and to blame others" (*Id.* at 10 | 13 months<br>$95,000 fine | 4 months<br>$100,000 fine |

6

| Defendant Name | Scheme | Govt's Asserted Aggravating Factors | Government Sentencing Rec. | Sentence Imposed |
|---|---|---|---|---|
| Agustin Huneeus<br><br>No. CR 19-10117 IT | Recruitment scheme and ACT scheme (Parent) | 1) Agreed to pay a total of $300,000 to Singer[1]<br>2) Repeat player – first ACT scheme, then recruitment scheme (Govt.'s Supp. Sent. Memo, p. 2)<br>3) Active Participant (*Id.* at 1)<br>  a. Repeatedly lied to high counselors about relocation of test (*Id.* at 8)<br>  b. His crime was "calculated and carefully planned" (*Id.* at 8)<br>4) Involved daughter in the scheme (*Id.* at 7 – 8)<br>  a. Enlisted her to write false email to U.S.C. (*Id.* at 5)<br>5) He had complete insight into scheme (*Id.* at 8)<br>6) He agreed to deduct payments from taxes (but apparently could not) (*Id.* at 8)<br>7) Later, he agreed to lied to the IRS for Singer's audit (*Id.*) | 15 months<br>$95,000 fine | 5 months<br>$100,000 fine |

7

[1] Mr. Huneeus was arrested before his daughter was admitted to U.S.C., and as a result he never sent Singer the agreed amount of $200,000.

CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2019, I filed the foregoing with the foregoing with the Clerk of the Court for the District of Massachusetts using the CM/ECF system, which will send notification of such filing to all attorneys of record via the notice of electronic filing (the "NEF").

Dated: November 8, 2019

/s/ Ted W. Cassman
Ted W. Cassman